Cooley vs. Broad.

## No. 6593.

### STOUGHTON COOLEY vs. H. H. BROAD ET AL.

A contract by which the owners of certain vessels unite in an association to carry passengers and freight for hire, each furnishing a certain capital to the association, and each receiving a certain proportion of the profits, constitutes the owners, as to third persons, commercial partners, and as such, liable *in solido*, for the debts of the association, no matter what restrictive clauses the contract may contain. The holder of a solidary note can not have its solidarity impaired, by the unathorized action of his collecting agent, who receipts in favor of one of the solidary debtors on the note for "his share" of the debt.

|  |  |
|---|---|
| 29 | 345 |
| 50 | 8 |
| 29 | 345 |
| 104 | 134 |
| 29 | 345 |
| 107 | 712 |
| 29 | 345 |
| e114 | 624 |
| 29 | 345 |
| 121 | 156 |

APPEAL from the Fifth District Court, for the parish of Orleans. *Cullom*, J.

*Hornor & Benedict*, for plaintiff and appellee.

*Fred. D. King*, for defendants.

The opinion of the court was delivered by

SPENCER, J. On the twenty-sixth of June, 1875, the defendants, Broad, Dowling, Trousdale, Quaterreaux, Verlander, and Powers, owning among them several steamboats running in the Opelousas trade, formed an association whereby they agreed that they would put into said association their respective boats. The objects of the association were declared to be "to co-operate together in building up and maintaining the trade, etc., known as the 'Opelousas trade,' by running their respective boats between New Orleans and Washington, Louisiana, and carrying freight and passengers between these points," * * * "to use their influence and energy to enhance the interests of all the parties to this agreement, and to prevent and discourage opposition, etc." The agreement is made for one year, under articles and stipulations as follows:

By the first, the parties agree as to the boats they are respectively to put in. By the second, they fix the relative values of their boats, and name certain of themselves as a "board of control," and define generally its powers. By the third, they provide for replacing any boat disabled or lost, and regulate such boat's participation in the profits and losses; also, fix the time and manner of each boat rendering its accounts and paying over earnings to the board of control. By the fourth, they agree to the closing of certain warehouses and the opening of others; and provide that the parties shall respectively furnish and keep their boats in good order; repairs of less than seventy-five dollars in amount to be made at the expense of the association. It is further declared that "this agreement is not a copartnership, and that none of the boats named or their substitutes or the owners thereof, shall be bound for the debts of each other, nor shall anything herein be construed as making them liable or responsible therefor." The fifth article declares who shall be captains of the several boats, and provides for their removal.

On the seventh of February, 1876, this "board of control," acting through James M. Dowling, A. P. Trousdale, and William R. Verlander, chartered from the plaintiff, Stoughton Cooley, for the use of said association (which in said act is styled the Opelousas Packet Company), the steamboat Tensas, for a period of five months, at one thousand dollars per month, payable monthly in advance. For the four deferred payments, four notes were executed, each for one thousand dollars, and payable as follows, at the Citizens' Bank: To the order of Jesse K. Bell, for five-twelfths; to the order of J. M. Dowling for four-twelfths, and to the order of W. R. Verlander for three-twelfths.

These notes were severally indorsed in blank by Bell for five-twelfths, by Dowling for four-twelfths, and by Verlander for three-twelfths. As they respectively fell due, Bell paid five-twelfths and Dowling four-twelfths thereof. Verlander made default, and three-twelfths, or two hundred and fifty dollars, of each note remains unpaid.

The payments by Bell (who it seems acted in this matter for the defendant Broad) and by Dowling were made at the bank, and were indorsed on the notes by the note clerk in words to this effect: "Received from J. M. Dowling his part, $333 33⅓—four-twelfths." "Received from J. K. Bell $416 67, his part on within note—five-twelfths."

Plaintiff now sues all the members of said association as commercial partners, and liable *in solido* for the balances due on said four notes.

Dowling and Broad answered by a general denial. Dowling subsequently filed an amended answer, alleging that he had indorsed said notes for only four-twelfths, and that he had paid that amount of each of them, and that plaintiff "had receipted for each of said sums upon the back of each of said notes in full for his part and portion of each of said notes ; that he has paid all that he was bound for, and has been released from further liability."

There was judgment against the defendants *in solido*, and Broad and Dowling have appealed.

There are two questions involved:

First—Did the agreement of the twenty-sixth of June, 1875, create a commercial partnership, binding the parties thereto *in solido* for its debts ? and if so —

Second—Did the receipts of the note clerk of the bank, on the back of the notes, in favor of Dowling and Bell (the latter representing Broad) for "their parts," release them from solidarity and further liability ?

First—The only reason for doubting the existence of the partnership arises from the express declaration of the parties that no partnership was created by the act of association. They certainly did enter into an association, furnishing thereto specified capital, agreeing to divide profits and losses in fixed proportions, and engaging to carry freights and pas-

sengers for hire. This, under our law (O. C. C. 2796), certainly constituted a commercial partnership, and made the associates liable solidarily for debts of the association. When there exist all the conditions which, by law, create a legal relation, the effects flowing legally from such relation will follow, whether the parties foresaw and intended them or not. Thus where a man transfers to another for a sum of money, and absolutely, the ownership of a thing belonging to him, the contract between them is that of sale, and all the legal consequences of that relation will follow, even though the parties declare it not a sale, but some other contract. The fact that the parties had made stipulations between themselves as to their liability for each others' debts, or as to the proportion of their several responsibilities, can not affect third persons, even had these stipulations been within the knowledge of such third persons.

Second—The bank clerk, as such, had no authority to give release to any of the makers of said notes beyond what would result from their payments. No authority or power existed in him, except to receive payment. There is no pretense that plaintiff ever expressly authorized him to renounce any of his rights against the makers of the notes.

The judgment appealed from is affirmed with costs of both courts.