## No. 61.

JOHN MURRELL, SR., ET AL. VS. MARY E. MURRELL AND THOMAS W. FULLER, TUTOR.

<div style="float:right">33 1233<br>107 247</div>

The fact that the appeal bond is signed by only one of several appellants, does not vitiate the appeal, in as much as, under the settled jurisprudence of the State, such bond is valid even if not signed by the appellant.

A partnership from which the parties have excluded some of their respective property, is not an universal partnership under our Code.

An act of universal partnership must be registered in the Mortgage office, and the registry is necessary, *even between the parties*, to give such character to the partnership.

A partner who, in violation of the act of partnership, enters into another firm, does not thereby give the right to his original co-partner to claim a share in the profits of the new firm. The violation of the agreement may give rise to an action for damages; but, in as much as the said original co-partner could not be held, without his consent, for the debts of the new firm, he cannot claim that he was made a partner therein, even unaware, on the ground that the original partnership was an universal one.

A partner is estopped, in the liquidation of the partnership, from denying to the prejudice of his co-partner any of the entries in the books of the firm, unless he charges and proves error.

A *dation en paiement*, made by a partner to his own wife, of the property of the firm, in satisfaction of her claim against the firm for her paraphernal funds held by it, is legal and valid.

APPEAL from the Second Judicial District Court, parish of Webster. *Drew, J.*

78

Murrell et al. vs. Murrell and Fuller.

*J. C. Egan, C. E. McDonald* and *W. G. McDonald,* for Plaintiffs and Appellants:

First—Every partner may, without the consent of his partners, enter into a partnership for the share he has in the partnership. C. C. 2871 ; 24 An. 317; 16 An. 418.

Second—There must be at least two persons· to every contract, and one person cannot act as agent to two persons and make a sale with himself for them. 2 R. 556; 6 L. 407; 11 M. R. 298; C. C. 1798.

Third—In order that the wife can make a valid purchase for herself with her paraphernal property, she must have a separate administration of her paraphernal funds. 20 An. 531; 21 An. 343 ; 13 An. 105, 588.

Fourth—The use of Mrs. Murrell's paraphernal property belonged to her husband, and the firm owes her nothing for it. 21 An. 343, 344, 345; 18 An. 105, 588; 16 An. 290.

Fifth—The defendants claim sale of cotton, the onus is on them to prove a valid giving in payment.

Sixth—The entries show no elements of a contract.

Seventh—The entries are not correct in date.

Eighth—To have any effect against John Murrell they should be shown to have been made at the date they bear and during the existence of the partnership.

Ninth—It is not probable that a husband who was administering the property of his wife prudently, would invest her money in cotton on Red River.

Tenth—We are to presume that he would be as prudent in administering his wife's property as the partnership business, and if he refused to take cotton for claims due the partnership, as he did, he would not at that time take cotton for his wife's claim.

*J. D. & J. T. Watkins.* for Defendants and Appellees:

First—Plaintiff basis his claim to share in the commission house of Rawlins & Murrell upon the partnership articles of I. Murrell & Bro., dated in 1848. Plaintiff's petition and oath as a witness so states. Partnership of I. Murrell & Bro. was confined to Claiborne parish. The business of Rawlins & Murrell was conducted in New Orleans. The first was planting and a retail business ; the second was a commission business.

Plaintiff's judicial declarations amount to full proof against them. R. C. C. 2291; 4 R. 157; 6 A. 397; 13 An. 369; 15 An. 676; 16 An. 22; 24 An. 300.

Second—Plaintiff and defendant made all their partnership agreements in writing, and in the first one stipulated that any change should be in writing.

Parol evidence cannot be admitted against or beyond these writings. R. C. C. 2276 and 2236 ; Story on Partnership, Sec. 278.

Third—John Murrell was a planting partner with Isaac Murrell in Claiborne; this did not make him a partner in Rawlins & Murrell in New Orleans. A partner of my partner is not my partner. H. D. 1082, No. 3.

Fourth—The agreement of 8th March, 1848, limited the firm of I. Murrell & Bro. to six years, and did not prevent I. Murrell from joining Rawlins in 1866. After the six years, it was a partnership at will and might be dissolved, or I. Murrell might withdraw at pleasure. Smith's Mercantile Law, p. 54; Story on Partnership, Sec. 279.

Fifth—Entries in partnership books at the time of the transaction are conclusive on the partners. The partners are mutual agents of each other, and the entry an account rendered of the transaction. 1 H. D. 511, No. 6 and No. 8.

Sixth—A partnership is a commutative contract. R. C. C. 2301. Something must be put in by each partner—credit, skill, industry, money or property, and profits and losses must be shared. R. C. C. 2814; Smith's Mercantile Law, pp. 43, 44 and 50, 52, 54; Bouvier's Dictionary, Partner, pp. 285, 286, 291.

There must be an agreement to be partners, otherwise there is no partnership. 30 An. 631.

There must be a contract, and each partner must put in something to form a partnership. Story on Partnership, Sec. 2; Story, Sec. 2, paragraph 3.

Some important ingredients said to constitute its essence, a contract. Story, Secs. 3, 4, 5, 6, and p. 19, Sec. 15. Some common stock must be brought in by each party—money, goods, effects, or other property, or labor, or skill—something must be contributed.

## MOTION TO DISMISS.

The opinion of the Court was delivered by

POCHÉ, J.   Appellees move for the dismissal of this appeal on the ground that John Murrell, Sr., alone has signed the appeal bond, and his co-plaintiffs, his children, acting in these matters as the legal representatives of their deceased mother, and necessary parties in this appeal, have not signed said bond, or furnished any appeal bond.

The record shows that the appeal was prayed for by John Murrell, Sr., and his co-plaintiffs, William C. Murrell and Lucinda Murrell, wife of N. C. Walker, through her legal minor heirs represented by their tutor, N. C. Walker; that the names of all the plaintiffs are embodied in the appeal bond, as appellants and obligors, and that the sureties bind themselves for these two plaintiffs as well as for John Murrell, Sr. Under the well settled rule of our jurisprudence, holding an appeal bond, even when not signed at all by the appellant, as sufficient in law to sustain an appeal, we cannot conceive how this bond is vitiated because it is signed by one of the three appellants alone, when by the tenor thereof, it distinctly appears to be the bond of all three. If not signed by any of the appellants, it would have been good (Louque's Digest, page 32, No. 19); and it follows that the fact of its being signed by one of the appellants only, cannot be held as excluding the other appellants from any participation therein, or any responsibility thereunder. A different case would be presented if the bond had been made in the name of one of the plaintiffs, without mention, in the body of the instrument, of the other plaintiffs. In such a case, it would have been the act of that plaintiff alone, and could have conferred no benefit, and entailed no responsibility on the other plaintiffs. 26 An. 356. We think that all the plaintiffs are properly before us as appellants, and, therefore, conclude that the motion to dismiss cannot prevail, and hence it is overruled.

## ON THE MERITS.

This is an action brought by John Murrell, Sr., and his children by right of representation of their deceased mother, who was the partner in community of said John Murrell, for a final liquidation and settlement of the parnership which had existed between said John Murrell and his brother, Isaac Murrell, from the year 1848 to 1876.

We gather from the voluminous and very complicated record, the following salient facts, as bearing upon the issues presented for our consideration in this appeal.

In March, 1848, Isaac and John Murrell formed a co-partnership "under the name of I. Murrell & Bro., in the business of *merchandising* and *farming*," for a term of "six years from date and longer, unless each partner may mutually agree to dissolve then;" and the written articles of partnership further stipulated that the farming operations should be under the control and management of John, described as the *farmer*, and the mercantile operations were placed under the management of *Isaac, the merchant*. Each partner was to furnish, as part of his investment, a certain amount in cash, and all his lands, improvements, stock of all kinds, and other property, reserving certain notes and accounts, some cotton, and forage, and some real estate of John Murrell, situated in the State of Arkansas, reserving, also, each partner's slaves, whose labor, however, was to be furnished to the partnership.

It was further stipulated that each partner should devote his whole time to the interest of said concern, and that during the partnership neither partner should engage in any trade, speculation or other business of profit, on his own account, without the consent of the other partner in writing, and that the accounts of each branch of business should be kept in books for that purpose, open at all times to the free use of each partner, and that profits and losses should be equally divided.

At the expiration of the term of six years, the partnership was continued by tacit consent, without any express stipulation to that effect in writing or otherwise.

Now, it appears that in 1866, Isaac Murrell formed a co-partnership in New Orleans with S. W. Rawlins, under the name of Rawlins & Murrell, for the purpose of transacting a cotton factorage and commission business, for a term of one year from June 8, 1866, the business of which in New Orleans was placed under the management of Rawlins, and that in the country, under the control of Isaac Murrell, and the profits and losses of which were to be divided in the proportion of three-fifths to Rawlins and two-fifths to Murrell.

After its limited term, this partnership was renewed from time to time, until its final dissolution in 1876.

The record shows that this partnership realized considerable profits. It also appears from the record that, as far back as the year 1855, a separate account was opened in the mercantile books of I. Murrell & Bro. in the name of Mrs. E. R. Murrell, wife of Isaac Murrell, and was continued from year to year until 1876, covering, in the main, sums of money which she inherited from the successions of her father and of her brother, and in which account she was declared in 1876, a creditor of that firm in the sum of $11,411 95. It also appears that, after the dissolution

of the partnership of I. Murrell & Bro., in January, 1876, and previous to the death of Isaac Murrell, which occurred in June, 1877, the two partners had begun a settlement of their affairs and a partition in kind of the partnership assets, under which Isaac Murrell had been allotted lands and personal property, appraised by mutual consent at $29,168 49, and John Murrell, Sr., had received the same kind of property, amounting in its estimated value to $16,116 04, which partition is inscribed in full and in detail in the day book of the firm. The record further discloses that, after the death of Isaac Murrell, the partition thus begun was ratified in a notarial act of partition by John Murrell and his children on the one hand, and the heirs of Isaac Murrell, represented by their tutor, acting under the advice of a family meeting, in so far as the division of the real estate in kind was concerned, and that since the institution of this suit, the division of notes, accounts, and other personal partnership assets, made as above stated, between Isaac and John Murrell, was enforced, by consent of both parties, with a slight amendment.

The main object of this suit is to have John Murrell recognized as a partner in the firm of Rawlins & Murrell, and as such entitled to an equal division with Isaac Murrell in his share of the profits of that business; and to cause the rejection of the greater part of the credit of $11,411 95 appearing in favor of Mrs. E. M. Murrell on the books of I. Murrell & Bro., and to reject other and minor items.

It must be noted that the settlement of all these accounts was, on motion of parties, referred by the court to experts and auditors, whose report was satisfactory to neither side of the controversy, and on joint motion of counsel the report was disregarded in the determination of the issues presented in the case.

The judgment of the District Court rejected the claim of John Murrell to participate in the profits of the firm of Rawlins & Murrell, confirmed and ratified the partition begun by the two partners, I. Murrell & Bro., and established in the notarial partition of February 24, 1879, under which Isaac Murrell had waived real and personal property to the value of $29,168 49, and John Murrell, the sum of $16,116 04, allowed credit to John for the amount received in excess by Isaac, recognized the debt due by the firm to Mrs. E. R. Murrell, to wit: $11,411 95, debited John with one half of that sum, with one half of the sum of $9853 57, amount of a debt of I. Murrell & Bro. to Rawlins & Murrell, and paid in full by Isaac Murrell, and with a sum of $419 97, and another sum of $816 92, due by him to Isaac Murrell, and gave him credit for sundry small sums for excess of collections made by Isaac, and concluded by rendering judgment in favor of defendants and against plaintiffs, in the sum of $5229 48; costs to be paid in equal proportions

by both parties. From that judgment the plaintiffs have taken the present appeal, which presents for solution the two following questions:

1st. Was John Murrell, Sr., a partner in the firm of Rawlins & Murrell, and as such entitled to share equally with Isaac Murrell in his proportion of the profits of that business?

2d. Was Mrs. E. R. Murrell, wife of Isaac Murrell, entitled to the credit of $11,411 95, allowed her on the books of I. Murrell & Bro.?

1st. A proper solution of the first of these questions may be facilitated by an understanding of the kind of partnership which was formed by Isaac and John Murrell in 1848.

Plaintiffs contend, and defendants deny, that it was a universal partnership. In our Civil Code, Art. 2829, a universal partnership is defined to be a contract by which the parties agree to make a common stock of all the property they respectively possess.

In the case at bar, a reference to the articles of partnership shows that the slaves respectively owned by the parties were not to be included in the common stock, nor were certain notes and accounts and other personal property, and certain real property belonging to John Murrell, to be included in the partnership stock. And hence, the contract did not embrace all the property which the parties respectively owned, either immovable or movable.

Again, Art. 2834 C. C. requires that all universal partnerships must be created by writing, registered in the manner hereafter prescribed, i. e., by inscribing the same in the mortgage office in the place where the principal business of the partnership is carried on.

In this case, it is not even pretended or alleged that the articles of partnership, which were signed in duplicates, had ever been registered in any office.

There is no force in the argument of plaintiffs, that they were not called on to prove such registry, and that, as between the parties, registry is not necessary in law. The authorities which they rely upon in support of that position, have reference to the laws governing the registry of sales, mortgages and privileges, which specially provide that the object of registry is notice to third parties, and that unregistered acts of sales, mortgages or privileges are binding between the contracting parties. But no such provision or exception is contained or even implied in the positive and mandatory legislation requiring, under pain of nullity, the inscription of the articles of partnership, in order to create universal partnerships. But, even if this proposition admitted of a doubt, we are of opinion, after a most thorough examination and an exhaustive analysis of the evidence in the record, on that point, that John Murrell, Sr., never was a partner in the firm of Rawlins & Murrell, and is, therefore, not entitled to share in the profits of that concern.

Plaintiffs' allegations on this point are substantially as follows :

" That with the consent of petitioner, John Murrell, and using exclusively the means and funds of said partnership of I. Murrell & Bro., Isaac Murrell entered into a commercial partnership with S. W. Rawlins as cotton factors and commission merchants, under the style of Rawlins & Murrell to do business in New Orleans." .

It is too elementary to be argued, that the proof must correspond with the allegations, or else the proposition is not sustained.

Now, John Murrell, in his testimony, admits that he was not consulted by his brother touching the formation of that partnership, and heard of it only after its organization, that he furnished no means, labor or skill to it, and that he did not consider himself bound for any of the debts and liabilities of that firm, further than he might be so held under the stipulations in his partnership of I. Murrell & Bro.

The articles of partnership of Rawlins & Murrell show that neither partner invested any capital in the concern, and hence, Isaac Murrell did not use, as investment in it, any of the funds or means of I. Murrell & Bro.

The books of Rawlins & Murrell show that separate accounts were kept in the name of I. Murrell & Bro., who did a very extensive business with them, and in the name of Isaac Murrell personally. John Murrell testifies that Isaac Murrell, in his cotton transactions, would discriminate between the cotton which he purchased for I. Murrell & Bro., and that which he bought for Rawlins & Murrell, in which latter case he purchased in his individual name.

The record further shows that John Murrell was present at the inventory taken of the property of Isaac Murrell, in which the latter's two-fifths interest in Rawlins & Murrell was appraised, to which he made no objection or urged no claim of his in that partnership. In a word, his whole conduct from 1866 to 1876, as shown by the record, proves conclusively to our minds that he had never considered or thought that he had any interest whatever in the business of Rawlins & Murrell until the declaration of the first dividends by Rawlins, the liquidator, and until he had discovered a letter written by his brother Isaac to Rawlins, under date of August 26th, 1876.

In that letter, Isaac Murrell, giving instructions to Rawlins touching an inventory to be taken in the succession of his deceased wife, E. R. Murrell, used the following language:

" I hope you and any friend you may select and request will act as appraisers, and you will attend to the matter at your earliest convenience and point out my interest in the business of R. & M.  I am fully aware you cannot give a full nor clear correct inventory; still I hope you will be able to approximate the value of my interest, which of

course is community, and as I always intended to divide everything with brother John *it is also held in co-partnership with him;* therefore the community is of the co-partneship of Isaac Murrell & Bro."

This declaration, and similar statements made by Isaac Murrell to three or four persons, are all the elements of testimony which plaintiffs have introduced in support of their clear and unambiguous allegation, that Isaac Murrell *had with the consent of* John Murrell, *using exclusively the means and funds* of I. Murrell & Bro., formed a partnership with Rawlins.

The declaration in this letter simply means to indicate an intention on the part of Isaac Murrell to divide, in a spirit of liberality, with his brother, his share of the profits in the business of Rawlins & Murrell, and is explained by a statement made by Isaac Murrell to his partner Rawlins, long previous to the date of the letter, to the effect *that if the business of Rawlins & Murrell wound up with a profit, he would divide his share with his brother, John Murrell.* This falls very short of proving a previous consent of John Murrell, and an agreement between him, Isaac Murrell and S. W. Rawlins, to form together the firm of Rawlins & Murrell, which is the substance of plaintiffs' allegation on this point, and which is the element of proof required by law to show the existence of a partnership. Under our law, partnership is a contract between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry furnished in determined proportions by the parties. C. C. 2801.

Partnerships must be created by the consent of the parties. C. C. 2805; Smith's Mercantile Law, pages 43, 44, 50, 52; Story on Partnership, Sec. 2; Bouvier, *verbo* Partnership; 30 An. 631.

John Murrell, in his testimony, admits that he was not consulted about the formation of this partnership, of which he knew nothing until its existence was publicly known, and, therefore, he could not have given his consent and become a member of the firm. He admits in his testimony, that he contributed neither funds, credit, skill or industry to the concern, and we thus find wanting, in his theory of partnerships, every element required by law. But he invokes, as a last resort, the effect of this article of their partnership: "5th. Each partner shall devote his whole time exclusively to the interest of said concern, advising with the other on any important matter that he would believe required counsel, and during the co-partnership neither shall engage in any trade, speculation or other business of profit, on his own account, without the consent of the other partner in writing," and he argues that the labor and time which his brother contributed to the business of Rawlins & Murrell was that much taken from the firm of I. Murrell & Bro., for which reason he, as a member of that firm, is entitled to participate in

the profits realized from such time and labor; and that, as his brother was forbidden from engaging in a separate business without his consent, it follows that Isaac must have intended to include his brother John in the new firm.

We consider that article as prohibitory, and, if in force in 1866, it was violated by Isaac by his entering into the new firm. This violation might have entitled John Murrell to a dissolution of the firm of I. Murrell & Bro., or to an action for damages against his brother and partner, but it cannot, under any possible contingency, have wedged him into the firm of Rawlins & Murrell.

Under his own theory, the only partnership which might be shown by the testimony and by his argument drawn from the article under consideration, would have been one in which he was entitled to participate in the profits, but not liable for the losses. In Art. 2813 of the Civil Code, we read that "A stipulation that one of the contracting parties shall participate in the profits of a partnership, but shall not contribute to losses, is void, both as regards the partners and third persons." A stipulation which is forbidden by law, in a contract, cannot be implied even as the result of a tacit understanding.

The crucial test of the whole proposition is to be found in the answer, under the evidence in this record, to the following question: In case of losses by the firm of Rawlins & Murrell, could John Murrell have been held liable to the creditors of that firm, or by Isaac Murrell himself, for any part of such losses? The question is most emphatically answered in the negative by John Murrell himself in his testimony, corroborated by all other written as well as parol testimony, which the record affords, and by all the equities of the case.

The conclusion that he was not a partner in the firm of Rawlins & Murrell, and not entitled to any share of its profits, is, therefore, inevitable.

2d. As to the credit of $11,411 95 allowed to Mrs. E. R. Murrell, plaintiffs contend that, from the evidence it appears that she was partner in community with her husband, and that no evidence having been offered to show that she had retained the administration of her paraphernal funds, the presumption was that they were administered by her husband, to whose credit such funds should have been entered, and that, as a partner, he was not entitled to interest on such funds thus invested by him in the partnership stock. Hence, they contend that the interests, amounting to $4720, charged to the credit of Mrs. Murrell's funds, should be stricken out. They further charge that, if even the balance of $2205 to the credit of Mrs. Murrell in 1861, was properly charged as due to her, the proposed dation in payment, of fifty bales of cotton the property of I. Murrell & Bro., through Isaac Murrell in 1861,

was null and void for the reason that it was not a sale, lacking the concurrence of two minds, as the transaction was carried on by Isaac Murrell alone, who could not represent two distinct persons in himself. Hence, they contend that the sum of $6300, realized as the proceeds of such cotton sold in 1866, by Rawlins & Murrell, should not be credited to Mrs. Murrell.

The record shows that, as far back as 1855, a separate account was opened and continuously carried on, in the books of I. Murrell & Bro., until January, 1876, in the individual name of Mrs. E. R. Murrell; that on a balance of her account after numerous entries on both the credit and debit sides, in February, 1861, she was a creditor of the firm in the sum of $2205 80, in payment of which fifty bales of cotton were transferred to her. It appears from the record that this lot of cotton was shipped in her name to Rawlins & Murrell, sold by them in her name, and proceeds the credited in their books in her name, and finally transferred to her credit to the firm of I. Murrell & Bro., in whose books they were credited to her, and in whose possession and control they have since remained. It is elementary that partnership books are evidence for and against the partners, who are each and all bound by entries made at the time in the partnership books, unless the same are proved erroneous. Hennen's Digest, p. 511, No. 6, 1087, No. 18, and other authorities there quoted.

Hence, we think and we, therefore, hold that entries made on the books of I. Murrell & Bro., in the separate and individual name of Mrs. E. R. Murrell, to the knowledge of John Murrell, without any objections on his part, not shown to have been made through error, either of law or of fact, estop John Murrell from denying that the funds thus charged to Mrs. Murrell were her separate paraphernal funds, of which she had retained the administration ; and that such entries and dealings, covering more than twenty years, completely rebut any presumption which may be invoked in favor of the husband's administration of his wife's paraphernal funds.

As to the alleged nullity of the dation in payment of the fifty bales of cotton, we hold that Isaac Murrell, individually or as the agent of his wife, was an entirely distinct person from the firm of I. Murrell & Bro., and that he was competent to make a valid sale to his wife of cotton in payment of paraphernal funds which the firm owed her. Such a sale would, in law, have been valid between husband and wife. We find, further, in the record, that John Murrell, on being informed of this transaction by his brother and partner, said nothing, but urged no objection. His silence must be construed as a ratification of the sale.

A careful perusal of the testimony on this point fully satisfies us that the sale was made in consideration of a valid indebtedness of the

firm of I. Murrell & Bro. to Mrs. E. R. Murrell ; that the transaction was legal, fair and honorable ; that the cotton was accepted by Mrs. Murrell, shipped and sold in her name and for her account ; that the proceeds received by the firm formed a binding indebtedness in her favor, and that she was entitled to the credit and to the interests allowed her on the same.

In making up the accounts between the two parties, the District Judge omitted a credit of $127 93, allowed John Murrell by agreement of counsel, made in ratification of the partition of notes and accounts made by the partners before Isaac Murrell's death, and he also omitted another small item of credit of $53 25, admitted by defendants' counsel to the same credit.

We find no evidence to support the item of $419 99, which he debited to John Murrell as a personal debt due by him to Isaac Murrell. In these particulars his judgment must be amended.

In keeping with the views herein above expressed, we make out the account of John Murrell, as follows :

To his debit—

His share of the firm's debt to Mrs. Murrell, $11,411 95......$  5,705 97
His share of the debt paid to R. & M. by Isaac, $9853 57..... 4,926 78
His personal debt to Isaac Murrell........................ 816 92

        Total............................................$11,449 67

To his credit—

Amount received in excess by Isaac Murrell, in lands, notes
    and accounts, and through collections made, in excess
    over John, of bad debts...............................$  6,716 44

        Balance debit against John Murrell............$  4,733 24

For which amount the defendants are entitled to judgment against the plaintiffs.

It is, therefore, ordered, adjudged and decreed that the judgment of the District Court be amended in so far as it omits to credit John Murrell & Co., plaintiffs, with the two items of $127 93 and $53 25, in so far as it debits said plaintiffs with the sum of $419 97, and in so far as it renders judgment in favor of defendants and against plaintiffs in the sum of five thousand two hundred and twenty-nine dollars and forty-eight cents, which judgment is hereby reduced to four thousand seven hundred and thirty-three dollars and twenty-four cents ; and it is further ordered that in all other particulars, and as thus amended, said judgment be affirmed ; the costs of this appeal to be paid by appellees.