## No. 2006
### Second Circuit Appeal

## GRAHAM PAPER COMPANY v. SAVERY M. LEWIS

(November 16, 1923, Opinion and Decree.)

(March 17, 1925, Opinion and Decree on Rehearing.)

(Ordered to Supreme Court on Certiorari and Review.)

(Reported in Louisiana Reports, Vol. 159, p. —; 105 South. 258)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Partnership—Par. 1, 3, 4.**

Where parties are associated by contract for the conduct of a business venture, and where each contributes a portion of the capital, whether it be in tangible property, such as money or goods, or intangible property, such as services, and where the parties share the profits in definite proportions, the business is a partnership, and the parties are bound, particularly as to third persons, accordingly.

2. **Louisiana Digest—Partnership—Par. 1, 4, 5, 7, 8.**

In this case there was a contract to engage in a business venture, the publication of a newspaper, and there were three partners, each of which furnished one-third, which constituted the capital of the concern, and they agreed to share as co-owners the profits which might accrue. It is a perfect illustration of the contract of partnership. The fact that they employed one of their members, at a stated salary, to manage the business does not change the status of their contract.

3. **Louisiana Digest—Partnership—Par. 8, 82, 83.**

In view of Articles 2801 and 2825, etc., of the Civil Code, a partnership formed for the purpose of publishing a newspaper is a commercial partnership in which each partner is bound in solido for the debts of the partnership.

### ON A REHEARING

4. **Louisiana Digest—Appeal—Par. 573.**

Judgment corrected as to credit allowed defendant on account.

Appeal from the Parish of Lincoln. Hon. J. B. Crow, Judge.

This is a suit against one partner for a debt of the partnership. There was judgment for defendant and plaintiff appealed. Judgment reversed.

Writs of the certiorari and review taken to the Supreme Court where the judgment was amended and affirmed.

(Reported 159 La. —, 105 Southern 258.)

S. D. Pearce, of Ruston, attorney for plaintiff, appellant.

J. B. Holstead, Dhu Thompson, of Ruston, attorneys for defendant, appellee.

PORTER, J. The plaintiff Company sues the defendant on open account for $796.37, and legal interest from January 1st, 1921, on the allegation that he was a member of a commercial partnership, which operated under the name of the Ruston Leader, and to which firm the goods charged on the account were sold.

There is an alternative allegation in the petition that, upon the dissolution of the partnership, the defendant assumed the payment of its debts.

The defense is a general denial, with certain special averments to the effect:

1. That the business conducted was not a partnership at all.

2. That if it was, it was not a commercial partnership, and defendant is liable for only his share of the debts.

It is also alleged that certain payments were made on the account which are not credited thereon, and the alternative demand is that if defendant is held for any amount, the said credits should be deducted.

There was judgment in the District Court, rejecting the demand, and the plaintiff Company has appealed.

The vital, if not the only, question in the case is, whether the contract, hereafter to be described, and to which defendant was a party, was one of partnership. There is no dispute about the account, except as to the credits just mentioned.

We assume that the learned District Judge concluded that the evidence did not prove a partnership. He did not hand down any written reasons for the decree, except the formal reason expressed therein.

The facts, which appear principally from the allegations of defendant's answer, from his testimony, and from that of his attorney, are as follows:

For some twenty years, the defendant was the owner of and conducted a newspaper and general printing business in the Town of Ruston, under the name of Ruston Leader. In the summer of 1920, defendant's health failed, and he was advised to cease his active work, and take a rest.

Acting upon this advice, he, on or about the first of August 1920, entered into a written contract with Ted E. E. Enloe and J. Boatner Carter, both residents of Ruston, whereby he sold to each of them a one-third interest in the said newspaper, material and business. This sale was entirely on a credit, and we are not advised as to the price or terms of it.

The contract further provided that Enloe should edit the paper and manage the business, and should receive $250.00 per month as a salary for those services.

It was agreed that after deducting the above salary to Enloe, and all other expenses of the business, the parties to the contract were to share equally in the profits.

The defendant testifies that he did not intend at the time the contract was made to enter into partnership, and that he was advised by his counsel at the time that the stipulation for the sharing of profits would not subject him to the liabilities of a partner, and he is corroborated by his counsel, Judge Holstead, who dictated the agreement.

The business was conducted by Enloe from the date of this agreement—about the first of August, 1920—until the first of following January. It was not a success. It not only failed to earn any profits, but debts accumulated, and the defendant saw that, unless something was done, the business would shortly go to pieces.

A settlement was made by which Enloe and Carter retroceded to him the interests which they held, and no part of the purchase price of which had been paid to him by either of them. This transfer was likewise in writing, but we know little about the details of it. It is admitted by the defendant that he paid Enloe $800.00, and assumed the payment of certain debts shown by a list furnished him by Enloe, upon which list was an account of $32.00, due the plaintiff Company. He says that he paid Enloe the amount just stated in order to avoid the delay of litigation with Enloe, and that he agreed to pay the debts just mentioned, because they were mostly due to the employees of the paper, and to people in the town, and that the effect of a refusal would have been injurious to the good name of the business. The evidence does not disclose what, if anything, was paid by Carter.

The court has not had the benefit of either of the above mentioned written contracts. The defendant testifies that he thinks he gave them to his counsel, and his counsel, while not able to say that this was true, declares that he has made diligent, but vain search for them. The defendant says he, also, has been unable to find them, after diligent search.

Several documents—copies of the Ruston Leader containing the validictory of the defendant and the salutatory of Enloe, and some letters in which Enloe ordered goods were filed in evidence by defendant, for the purpose, we assume, of showing that the defendant had no connection with the business during the period over which the account runs, and that Enloe was the sole proprietor of it.

In the issue of August 11th, 1920, there is a card signed by defendant, the caption of which, in bold type, is:

"Ruston Leader changes hands. Ted Enloe, an experienced newspaper man, takes over entire business."

In the body of the article, is this paragraph:

"I am writing this article for the purpose of giving public notice that I am out of the newspaper business. Mr. Ted Enloe takes over the entire newspaper and job printing plant, and will control the editorial and business management, and responsibility of the Daily and Weekly Leader."

The paper of the week following, August 18th, 1920, contained an announcement signed by Enloe, and beginning with these words:

"In purchasing the Ruston Leader, it has been with the belief that, etc."

The rest of the article throws no light upon the point at issue.

Several letters in which goods are ordered are filed in evidence. One of these, dated October 14th, 1920, (the contract was entered into in August, 1920) is headed, in bold type, "Ruston Leader", and, in much smaller type, there are the words: "Savery M. Lewis, Proprietor".

Two others, dated Nov. 24th, 1920, and Dec. 3rd, 1920, show in the same kind of type, the same heading, with the words: "Ted F. F. Enloe, Proprietor". The first of these letters is signed: "Ted F. F. Enloe". and "M. G. R.". and the other, simply "Ruston Leader".

Three copies of the paper, August 11th, August 18th, and October 6th, 1920, all carrying these words near the top of the first column of the editorial page: "Ted F. F. Enloe, Editor and Publisher".

We do not regard these documents as important, for three reasons. (1) If they were entitled to show that the defendant was no longer interested in or connected with the business, they were admittedly untrue, because he held a one-third interest, and was entitled to share the profits of it, (2) It is not necessary for a partner, to be liable as such that he should have any active control of the business, and, (3) the documents taken all together, do not fully sustain the contentions of the defendant.

Neither Enloe nor Carter testified in the case. Enloe had disappeared, and there is no evidence as to the whereabouts of Carter.

The Civil Code contains these provisions on the subject of partnership:

"Art. 2801. Partnership is a syllagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties."

"Art. 2813. A participation in the profits of a partnership carries with it a liability to contribute between the parties to the expenses and losses. But the proposition, like that of the profits, may be regulated by the stipulation of the parties, and, where they make none, is provided for by law."

"Art. 2814.  A stipulation that one of the contracting parties shall participate in the profits of a partnership, but shall not contribute to losses, is void, both as it regards the parties and third persons, etc."

"Art. 2805. Partnership must be created by the consent of the parties."

A controversy raged in the Courts throughout the United States and England for more than a century over the question whether a sharing in the profits of a business alone was sufficient to constitute a partnership, and the jurisprudence was hopelessly conflicting on the question. It was definitely settled in this state in favor of the negative of the proposition by the cases of Chaffraix vs. Price, 29 La. Ann. 185, and Chaffraix & Agar vs. Lafitte & Co. 30 La. Ann. 631. The doctrine of these cases, and others like them, is that where a party receives, in lieu of a salary, a definite portion of the profits of a business, but who has no *proprietory* interest in the property which comprises the capital of the business, he is not a partner, and the contract is not one of partnership.

But there has never been any conflict, in this State, at least, over the proposition that where parties are associated by contract for the conduct of a business venture, and where each contributes a portion of the capital, whether it be in tangible property, such as money or goods, or intangible property, such as services, and where the parties share the profits in definite proportions, the business is a partnership, and the parties are bound, particularly as to third persons, accordingly.

Learned counsel for the defendant cites the cases of McWilliams vs. Elder, 52 La. Ann. 995, 27 South. 352; Collom vs. Browning, 49 La. Ann. 1257, 22 South. 744; Bluefields S. S. Co. vs. Ferresas, 133 La. 424, 63 South. 96; Chaffraix & Agar vs. P. H. & T. 28 La. Ann. 93; and 29 La. Ann. 1002. Those, and a number of other cases like them, were where a definite portion of the profits were received as compensation for services, and, hence, the contract was not one of partnership. The McWilliams-Elder case is an illustration of the ruling principle in all of them. He was employed by the defendant to manage her plantation and store, and was to receive one-half of the net profits of the store business. Among other points decided was that the contract was not one of partnership.

One of the essential elements of partnership is the mutual contribution of capital by all the parties. It is true that capital may consist of services to be performed, but in the case just referred to, the defendant was to receive, presumably, full compensation for his services out of the profits, and could not be said to furnish any part of the capital.

These cases have no application to the one at bar, because Enloe's salary was entirely separate and apart from the profits. His salary came out of the gross proceeds of the business, and, in addition, he was to receive one-third of the profits, which, it was contemplated, would be yielded by his one-third interest in the property which he contributed.

The Courts have drawn a clear distinction between the obligations of members of such associations as between themselves and third persons, and have frequently held that as between themselves, they may not be bound as partners, but may be as to third persons. We do not deem it necessary to discuss this feature of the case, because we are of the opinion that the contract here was a partnership as between the members as well as to third persons. There was a contract to engage in a business venture; the parties each furnished one-third of the property which consisted the capital of the concern, and they agreed to share, as *principals*, as *co-owners*, the profits which might accrue.

It is perfect illustration of the contract of partnership.

The fact that they employed one of their members, at a stated salary, to manage the business, is not significant. It is a matter of common knowledge that members of partnerships are frequently employed in the conduct of the firm's business. It is rather the rule than the exception. A casual reading of some of the cases, such as Murrell vs. Murrell & Fuller, 33 La. Ann. 1240, and Leonard vs. Sparks, 109 La. 548, 33 South. 594, is calculated to convey the impression that the contract itself must not only contain all of the essential features of a contract of partnership, but that the parties must actually consent and intend to form a partnership. And this appears to be the view entertained by defendant's counsel, as expressed in his brief.

But this is a too literal interpretation of the decisions and of Article 2805 of the Civil Code.

The true doctrine, as we understand it, is, that the parties must consent and intend to make the contract, but when thus made, it is the sole prerogative of the Courts to affix to it the legal rights and obligations which, by law, flow from it, and when, from its terms, it falls within the classification of a particular contract, the intention to make such a contract will be conclusively presumed.

This doctrine is clearly stated in Amacker vs Kent, 144 La. 553, 80 South. 717, where the late Chief Justice Monroe, as the organ of the Court, said:

"What the parties to a contract may have agreed upon is a question of fact; whether their agreement, such as it may be, is one which constitutes them the partners of each other, is a question of law, about which the contractants are not infrequently mistaken."

"And the same rule is emphasized and elaborated in Cameron et al. vs. Ry. Co., 108 La. 99, 32 South. 208. The American and English Encyclopedia of Law, Vol 22, page 26, thus states the proposition."

"The intent which is controlling is the intent to contract for those things which the law declares constitute a partnership. If the parties intend to enter into such a contract, and actually do so, they will be partners, although they may have intended to avoid this consequence, or may even have expressly stipulated that they are not to be partners." See Cooly vs. Brown, 29 La. Ann. 345 and McDonald, etc. vs. Millandon 5 La. 403.

This is a general rule, and has been applied to other contracts than those of partnership. In Buckley vs. Whited & Wheless, 104 La. 125, 28 South. 922, where the contract under consideration was held to be one of sale, it was said:

"Parties are at liberty to make contracts so long as they are legal, and to agree to accidental stipulations but where they actually make a contract with fixed legal essentials, they are powerless to control the legal effects of the contract itself. The contract being made, the law governs the results." (Citing authorities.)

The above language was approvingly quoted in Paving Co. vs. St. Louis Cypress Co., 121 La. 152, 46 South. 193, which was also a contract of sale.

In a number of cases, the contract was held to be one of partnership, despite the express stipulation to the contrary in the written contract. Coley vs. Brown, 29 La. Ann. 345 Cameron vs. Ry. Co., 108 La. 99, 32 South. 208.

The business conducted in this case was a general newspaper and job printing business. The goods purchased consisted of print paper, paper for letter and note heads, and bill heads, card board, etc. The desired matter was printed on this paper and it was sold. It was a commercial partnership under the express terms of Article 2825 of the Civil Code, which this defines one of the purposes of a commercial partnership:

"For the purchase of any personal property, and the sale thereof, either in the same state or changed by manufacture."

The undisputed testimony shows that Enloe paid a draft drawn by the plaintiff on the Ruston Leader of date December 1st, 1920, for $140.00, this draft being paid December 7th, 1920, and that he paid a similar draft, $123.38, on November 11th, 1920. The defendant is entitled to credit for these two drafts, which total $268.38.

It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and set aside. It is further ordered and decreed that there be judgment in favor of the Graham Paper Company, and against Savery M. Lewis, in the sum of seven hundred ninety-six and 37/100 ($796.37) dollars, with five per cent per annum interest from January 1st, 1921, less a credit of $268.38, and that the costs be taxed against defendant.

(Crow, Judge, having rendered the judgment appealed from, takes no part.)

## ON REHEARING.

ODOM, J. This case was decided by our predecessors on this bench with the late Judge porter as the organ of the court, a rehearing was granted by them and the case was submitted at Monroe on April 24, 924. The present members of the court only a few days ago had their attention called to the fact that it had not been disposed of.

On rehearing we have two questions to determine, one presented by counsel for plaintiff, appellant, who points out that the court erred in allowing credit on account sued on and the other presented by counsel for defendant, who strenuously urges that the court erred in holding that a commercial partnership existed between the defendant, Enloe and Carter.

Our examination of the record convinces us that the court was in error in allowing credit on the account for the two payments made by Enloe, one on December 10, 1920, for $140.40, and one on or about November 15, 1920, for $123.88.

These payment were made by Enloe to apply on the account which was due, defendant, but we find that they were both credited on the account. Attached to the testimony of Paul H. Dean taken by commission is a statement marked "exhibit A" which he swears is correct. This statement shows items charged to defendant beginning on August 18, 1920, and ending December 14th of the same year, amounting to the sum of $1060.65. On this statement are shown credits of $123.88 paid on November 15, 1920, and of $140.40 paid on December 10, 1920, making a total of $264.28. This amount taken from the total amount of the account of $1,060.65 leaves $796.37, which is the amount sued for.

This suit was not filed until August 30, 1921, some six months after these payments were made and of course the credits had been allowed at the time the suit was filed.

We find one statement in the record showing a balance of $796.37 due and setting out the items which make up that amount. It is indentical as to items and dates with the one attached to Dean's testimony, except that the first item shown on it is for $6.13, date October 6, 1920. The Dean statement begins with an item of $56.16, date August 18, 1920.

Examining the statement carefully we find that in the month of August, 1920, defendant is charged with $56.16 on August 18th, $36.87 on August 23rd, and $30.85 on August 26th, making a total of items charged in August of $123.88. That is the exact amount paid by Enloe on November 15th. The statement also shows that defendant is charged with $140.40 on September 13th, and that is the exact amount paid by Enloe on December 10th.

These August and September debits having been taken care of by the November and December payments, of course were not shown on the account sued on in

August, 1921. The statement at that time showed a balance of $796.37 due. The organ of this court found this statement showing the balance due and also found these payments of November and December and gave credit for them on the amount sued for. He overlooked the fact that these payments took care of items of indebtedness not shown on the account sued on but were shown on the other statement attached to the testimony of Dean.

On the other question involved, that is, as to whether there existed a commercial partnership betweeen defendant S. M. Lewis, Enloe and Carter and as to the liability of the defendant for the whole amount of the debt, we adhere to the original opinion. We have carefully reviewed the law and after having done so we are not disposed to add to or take anything therefrom.

For the reasons assigned, our original decree is amended so as to read as follows: It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and set aside: It is further ordered and decreed that there be judgment in favor of Graham Paper Company and against Savery M. Lewis in the sum of $796.37 with 5% per annum interest from January 1, 1921, until paid, and that the costs be taxed against defendant.