## BRADLEY v. SWIFT & CO.

## BALTHAZAR v. SWIFT & CO.

———

(January 21, 1928. Opinion and Decree.)
(April 23, 1928. Rehearing Refused.)
(June 5, 1928. Writ of Certiorari and Review to Supreme Court Granted.)
(March 4, 1929. Opinion and Decree of Supreme Court.)

———

Norman, Breckwoldt and Schwartz, of New Orleans, attorneys for plaintiff, appelant, Balthazar.

Paul A. Sompayrac, of New Orleans, attorney for plaintiff, appellant, Bradley.

Miller, Miller & Fletchinger, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. On February 27, 1928, when these cases were before us origi-

nally, in an opinion rendered at that time we decided both cases in favor of the defendant, Swift and Company. The facts are stated in that opinion. It is only necessary, for our present purpose, to repeat that William Balthazar was killed in the course of his employment by the defendant, Swift and Company, and that Elizabeth Bradley, his widow, and Paul Balthazar, his father, claimed compensation under the Employer's Liability Act (No. 20 of 1914, as amended). We decided that the wife could not recover because she was neither living with nor dependent upon her deceased husband to any extent at the time of his death (Section 8, subsection 2, paragraph (e), Act 216 of 1924) and that the father could not recover because of the existence of a surviving wife (Section 8, sub-section 2, paragraphs (g) and (h) of Act 216 of 1924). The Supreme Court issued a writ of review and in its opinion handed down October 29, 1928, 119 So. 37, the conclusion of this Court with respect to the widow, Elizabeth Bradley, was affirmed, but it was held that the mere existence of a surviving wife would not preclude the father from claiming compensation, it being necessary, under the compensation law, that the surviving widow be entitled to compensation in order to exclude the father, and that, since the wife in this case was not entitled to compensation, the father's claim must be considered. The case was remanded to this Court for the purpose of determining the legitimacy of the deceased son and the dependency of the father, those questions not having been heretofore determined, the view of the matter taken by this Court rendering their consideration unnecessary.

Counsel for defendant admits the legitimacy of the deceased's parentage and relies solely on the defense that, at the time of the death of William Balthazar, Paul Balthazar, his father, was not dependent upon him to any extent.

In order for the father to be deemed dependent upon his son, it is only necessary to show dependency in the slightest degree. In the record we find ample testimony which, if believed, would support the father's case, and were it otherwise, and the question of whether the evidence, tending to prove dependency, preponderated in the father's favor in doubt, we would be inclined to resolve that doubt in the father's favor, conceiving it to be the proper judicial spirit in which all paternalistic legislation, such as the compensation law, should be interpreted and applied. But we are absolutely unable to believe the witnesses. The demand upon our credulity is too great. For example, it is said that the deceased, with unfailing regularity, over a period of twenty years, made quarterly remittances of $35.00 each to his father, and that these remittances were never made direct, but always conveyed to the father by his sister, Florence Prescott. Such is the testimony of the father and daughter. The father, an old and illiterate negro, seemed to derive much satisfaction from the use of the word "quarterly," which was, apparently, a new addition to his meager vocabulary and used it in reply to a number of questions to which the word was in no sense responsive. In addition to the testimony of the father and the daughter, there is the evidence of a negro preacher, living in St. Mary Parish, to the effect that he understood that William contributed $4.00 a week to his father, this amount being somewhat in excess of the quarterly payment testified to by the other witnesses. In our former opinion, referring to Elizabeth and William Bradley, we said:

"Elizabeth Bradley, or 'Lizzie' as she is frequently styled in the testimony, married

the late William Balthazar in the Parish of St. Mary. Both were illiterate negroes and in lieu of their signatures to their marriage certificates affixed their marks. William proved to be inconstant and after a short residence with his bride, left for New Orleans, where for twenty years he led a rather purposeless and aimless existence, sometimes employed, and more often otherwise, but ever and always, so far as the record shows, impecunious. Shortly before his death he, for the first time obtained steady employment, and with the defendant."

A reconsideration of the record confirms us in that view. William Balthazar, the deceased, was a shiftless, do-less, lazy negro, who lived from hand to mouth; who neither sought nor found steady employment until shortly before his death, with the defendant.

Charlotte Jenkins, who claims to have known the deceased for more than twenty years, testified to this effect, saying, in addition, that she kept him at her home and that otherwise he would have had no place to stay, no place to eat, or sleep. It is true that we rejected the testimony of this witness in the former hearing, when she testified to the ability of the deceased, William Balthazar, to read and write and upon the principle "falsus in uno, falsus in omnibus" little confidence can be placed in her unsupported evidence. But the claim made by the father and daughter concerning the clock-like regularity of these quarterly payments, and the uniformity of method employed we simply cannot believe. The deceased reached the peak of his earning capacity just before his death, when he earned about $54.00 per month, or $158.00 quarterly. To believe that out of this slender income he gave his father more than 20% would be difficult enough, but this was his maximum income which he enjoyed only a short time, and when his probable average earning is considered, the difficulty amounts to an impossibility. If we credit the deceased with the highest sense of filial obligation his income was so precarious that it must have often fallen far below the alleged quarterly payments, many times reaching zero, consequently however willing, he was not able to pay.

For the reasons assigned the judgment appealed from is affirmed.

———

JANVIER, J. The rehearing granted in this case was limited to the question of whether or not a parent in destitute circumstances is to be considered as actually dependent to any extent on one of his sons solely by reason of such destitution, and although the son had, prior to his death, contributed nothing to the support of the parent.

It seems to us that the problem is one very difficult to solve. Although there are in the jurisprudence of Louisiana several decisions of the Supreme Court and of the various Courts of Appeal which are almost decisive here, in each of those cases there was some point on which a clear differentiation could be based, and hence the exact question presented here has not yet received from the courts of Louisiana judicial investigation.

Counsel for defendant argues that, if the statute contained simply the word "dependent" instead of the words "actually dependent", destitution alone might be sufficient.

He also argues that the requirement of the statute, that the actual dependency must exist at the time of the injury or death, prevents its application to the facts presented here.

Except for the decisions to which we

have alluded, the question would be one of extreme difficulty and, even with such illumination as is thrown upon it by these decisions, it is not free from doubt.

It should be borne in mind that the compensation laws of Louisiana were the result of compromise arrangements between employers and employes.

On the one hand, the amounts awarded in compensation are not commensurate with the actual loss sustained, and on the other hand, the award in compensation is made regardless of fault on the part of the employer. It was certainly the intention of the act to recompense the party deprived of support, to some extent at least, for each of the items of loss sustained.

With this thought in view we find the reasoning on page 1027 of the opinion of the Supreme Court in Bourg vs. Brownell-Drews Lumber Co., Ltd., 120 La. 1009, most persuasive. In that case the parent sued in damages for the death of his minor son. As an element of damage he claimed that he was deprived of the potential right to claim from his son the maintenance to which he was entitled under Civil Code, Article 229, which provides that:

"Children are bound to maintain their father and mother and other ascendants, who are in need, etc."

It was argued that the father was deprived of this right and that this deprivation constituted a loss to him, and, therefore, an item of damage to be taken into consideration. The court refused to consider this item of damage, but in so doing said:

"But there has been no attempt to prove that plaintiff is in need or ever expects to be."

It seems, then, that our Supreme Court, had the parent shown that he was in need, or that there was a probability that he would be in need, might have awarded damages on this item.

If, then, this is an item of damage which, when the parent is in need or in destitute circumstances, may be taken into consideration in a tort case, and, if the compensation act was intended in a small measure to recompense persons who, as a result of industrial accidents, sustain losses, then should not the destitution of the parent alone be sufficient to entitle him to recover from the employer of his deceased son?

Another case to which we have alluded, and which is almost though not quite decisive of the question presented here, is Heinzelman vs. Board of Commissioners of the Port of New Orleans, 149 La. 215. This case indicates that our Supreme Court intended that destitution alone should be sufficient to entitle a parent to compensation for the death of a son. This was a compensation case and in discussing the question presented here the Court said:

"Counsel for defendant argues that plaintiff is entitled to nothing, because, under the provisions of the Civil Code, Arts. 223 and 226, though parents are granted the usufruct of the estates of their children, until the children attain their majority, it is expressly declared that such usufruct 'shall not extend to any estate which the children may acquire by their own labor.' Those provisions, however, deal with the interests of living children; and, moreover, they are not in conflict, but are to be construed with Article 229, which declares that 'children are bound to maintain their father and mother, and other ascendants who are in need.'

"Here we have a statute providing for a different situation; not for the disposition that shall be made of the estate for the disposition of part of the wages that a child would, or might, have earned and would have contributed to the maintenance of his parents if he had lived, and which

the statute under consideration declares shall be paid by the employer in whose service he was engaged when he lost his life."

This language would seem to be very strongly indicative of a view in the Supreme Court that destitution alone is sufficient to constitute dependency.

Other cases in which the question has been discussed are Gregory vs. Standard Oil Co., 151 La. 228, 91 So. 717; Hansen and Wife vs. The Ohio Oil Co., 2 La. App. 690; and Nelson vs. W. K. Henderson Iron Works and Supply Co., 1 La. App. 322.

In the Gregory case the Supreme Court said:

"The statute does not attempt to define what shall constitute 'actual dependence for support to any extent,' and the court cannot make any definite inflexible rule to govern every case. Each case must be considered in the light of its own facts and attending circumstances. Our conclusion in this case is that it is not necessary that the plaintiff should have been actually receiving from their son, contributions or pecuniary aid at the time of his death; that the son's parents, being in necessitous circumstances and he being a minor, that he had contributed his personal labor, in making a crop the year previous to his death and which went to their support; and when, after the crop was harvested, the son left, with the consent of his parents, to seek employment, promising his parents to send a stated amount of his monthly wages to employ a hand to take his place, constitute the parents actual dependents to such an extent as to bring them within the meaning of the statute."

If, then, a promise to contribute is sufficient where the parent is in need, we fail to see why a legal duty to contribute should not likewise be sufficient and this legal duty exists under C. C., Art. 229.

In the Hansen case the court considered the very question presented here, but re-fused compensation for the reason that the parents were not in need at the time of the death of the deceased. In that case the Court said:

"In support of their case, counsel for plaintiffs have cited Article 229 of the Civil Code, which reads as follows:
" 'Children are bound to maintain their father and mother and other ascendants, who are in need; and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal.'
"But, as we have seen, the parents of the deceased were not in need at the time of his death."

In the Nelson case it appeared that the son had contributed nothing to the support of the parents directly, but that the father, whose income was very small, was not able to support and send to school, all of his eight children and that under these circumstances the deceased son had been contributing $20.00 per month directly to the education of a minor sister. The Court found that it was the duty of the parent to educate his children and that, therefore, the father was under the legal obligation of educating the daughter, and if the son assisted him in assuming this obligation, although he paid nothing direct to the father, the father was dependent upon him. In that case the Court used most suggestive language as follows:

"The father's total income was forty dollars a month. He lived in Shreveport, in a rented house, and even if he had been required to support himself alone this amount would not have been too much. To say that he did not need the assistance furnished by the son is preposterous, and if he needed it, he was dependent upon the son to some extent."

Our conclusion is that, in the light of the cases to which we have referred, actual dependency at the time of the injury or

death exists where the parent is, at that time, in need, although prior to the injury or death the deceased child may never have contributed anything to the support of the parent.

The deceased was killed long prior to 1928 and hence the recovery is not based on the pro rata which his former contributions bore to his average earnings. Of course, if it had been, since there were no previous contributions, there would have been no recovery. However, under the compensation law, prior to the amendment of 1928, claimant was entitled, if dependent to any extent, to the full percentage provided for in the act.

The trial judge found that the average weekly earnings of deceased were $13.50. We have gone over the evidence carefully and are of the opinion that in this regard the trial judge was correct. The claimant is therefore entitled to 32½ per cent of $13.50 per week, or $4.39, for three hundred weeks.

It is therefore ordered, adjudged and decreed that the former opinion and decree be and it is hereby vacated and recalled, and it is now ordered, adjudged and decreed that there be judgment in favor of claimant, Paul Balthazar, and against the defendant, in the sum of four and 39/100 dollars ($4.39) per week, for three hundred (300) weeks, commencing April 1, 1925, with legal interest from November 5, 1925, on all instalments due at that time, and with legal interest on each subsequent instalment from its due date.

All costs to be paid by defendant.