FOURNET, Justice.
 

 The relatrix, Ophelia Moy, individually and for the benefit of her two minor children, is seeking to recover compensation from the Schuylkill Products Company and the New Amsterdam Casualty Company, its compensation carrier, for the death of her husband, who succumbed as the result of burns received when, in the course of his employment, a dangerous chemical, being carried in a wheelbarrow operated by him, exploded. The case is now before us on a writ of certiorari granted upon her application to review the judgment of the .Court of Appeal for the First -Circuit affirming the judgment of the .district court _dismissing the suit.
 

 According to the record the relatrix was married to the decedent in Monroe, Louisiana, in 1928 and she lived there with him until he went to Winnfield to work in 1931. He was very shortly thereafter convicted of a crime and confined in the state penitentiary until 1935 or 1936, at which time ' he was paroled in- the custody of Caesar Phillips of Baton Rouge. He worked for Phillips during his probationary term under his parole and then secured employment with the Schuylkill Products Company, remaining in the employ of this company until his death. He never returned to Monroe. Instead, from February of 1937 until his death, Moy resided in Baton Rouge with a concubine, Bessie Veal. Of his union with the relatrix there were two children, Elizabeth Moy, born June 19, 1925, three years prior to the marriage, and Bessie May Moy, born on January 10, 1929.
 

 Recovery in this case is predicated on the provisions of subsection 2 of Section 8 of Act No. 20 of 1914, The Employers’ Liability Act, as amended, Act No. 242 of 1928, p. 358, wherein it is provided that a wife and children under 18 who are actually living with the husband and father at the time of his death are conclusively presumed to be wholly and actually dependent upon him, but that where the husband and father is not actually living with his wife and children, there must be actual proof of their dependency on and support by the deceased employee.
 

 It was the contention of the relatrix that although over ten years elapsed’ between the time her husband left -Monroe and his
 
 *785
 
 death in Baton Rouge in 1941, he sent monthly amounts after his release from the penitentiary varying between $5 and $15 for the support of herself and their children and that they became reconciled in May of 1941, approximately two weeks before the accident, at which time she went to Baton Rouge to see him and remained with him for two nights.
 

 Both the lower court and the Court of Appeal were of the opinion that the relatrix failed to show that either she or her minor children were living with or dependent upon the decedent at the time of his death within the meaning and contemplation of Section 8 of Act No. 20 of 1914, as amended, and after a careful reading of all of the testimony and evidence, we find these conclusions amply borne out by the record.
 

 In support of her contention that she became reconciled with the deceased in Baton Rouge in May of 1941, the relatrix reliéd on her own testimony and that of Bessie Veal, decedent’s concubine, and she-relied on the testimony of Bessie Veal and of L. Davenport, a grocer of Monroe, to corroborate her testimony that the decedent did contribute to her support and that of the minors, Davenport testifying that he had seen the relatrix receive a number of letters with the return address of the decedent and that from at least two of them he had seen her extract money, $5 in 1939 and $25 at Christmas in 1940.
 

 The defendants, on the other hand, relied on the statement given a reputable attorney of Monroe, who represents the insurance company, by the relatrix, and a statement given an adjuster of the company by Bessie Veal, neither of which were signed. These statements do not contain any mention of the supposed reconciliation between the relatrix and the deceased or of the receipt of any regular contributions from him for the support of his family. In fact, the relatrix stated “In 1938, George Moy sent me five dollars ($5.00) by mail in the form of a five dollar bill. This was all that he ever sent me.” .And the statement of Bessie Veal is to the effect that “During all the time I knew and lived with George Moy, he did not see or hear from his wife in Monroe, La. During that time he contributed all he earned to help defray our household expenses *. * ' ■ *. As far as I know he never sent any money to his wife in Monroe.”
 

 While both of these witnesses denied the correctness of these statements in so far as they imply Moy did not contribute to the support of his wife and children, we believe, as did the trial judge and the Court of Appeal, that their testimony is not entitled to any credence. No useful purpose could be served by analyzing their testimony here. Suffice it to say that a mere reading thereof will show that in some respects they contradict each other, in some they are impeached, and in others their testimony is, to say the least, fantastic.
 

 However unfair it may seem that these unfortunate children should be made to continue suffering because of the unworthiness of their father, simply because their mother or some one else on their behalf did not coerce him by means of legal proceedings to fulfill the duties legally imposed
 
 *787
 
 upon him as their father, our lawmakers did not provide for such a case under our compensation law and we are powerless to prevent the perpetuation of this injustice that has been brought upon them through no fault of theirs and that must, in the future, be continued in similar instances until the legislature, in its wisdom, may see fit to correct the same, since this is a matter that falls exclusively within the province of that branch or our government.
 

 For the reasons assigned, the judgment of the Court of Appeal for the First Circuit is affirmed.