This suit, under the Workmen's Compensation Laws of Louisiana, Act 20 of 1914 as amended, is brought on behalf of a minor, Billy Louis Thomas, by his mother, who is now Mrs. Viola Geffert Haynes. The defendants are Loffland Brothers Company and Insurors Indemnity and Insurance Company, the former the employer of the deceased employee at the time of his death, and the latter the insurers of the said employer.
The suit is based on the death of the father of the minor while he was in the employ of Loffland Brothers, the death resulting from an accident which occurred in the course of and arose out of his employment in the hazardous business of his employer. The accident and the ensuing death occurred on August 12, 1945.
The sole defense is based on the fact, which is not in dispute, that the child was not living with the father at the time of *Page 81 
the father's death, and was not receiving support from the father at that time.
There was judgment dismissing the suit and plaintiff has appealed.
As we have said, the facts are not in dispute in any essential detail. The father, Louis F. Thomas, and the mother, now Mrs. Viola Geffert Haynes, were married in 1937. The minor, Billy Louis Thomas, was born to these parents on June 13, 1939. The parents were divorced in January, 1941, and under the terms of the decree of divorce the custody of the minor was awarded to the mother, and the father was ordered to pay to the mother, for the support of the minor, $15 per month. The mother has retained custody of the minor ever since that time. From the time of the divorce until the death of the father the child never lived with the father and no contribution for his support was made by the father.
The mother, in an attempt to communicate with the father, shortly after the divorce, in order to persuade or force him to contribute to the support of the child, wrote to his brother and his mother several times, but, she says, that she "could not find out where he was." He entered the Military Service of the United States and she went to the Army Base at which she heard he had been stationed, but says that he had been moved to another post, and she, therefore, wrote more letters to his mother and to his brother and finally obtained, what she thought was correct information to the effect that he had been sent overseas with the armed forces and was reported missing in action.
This information was not correct as she discovered when, at about Christmas time 1944, the father came to see the child at her mother's house. During that visit she asked the father to comply with his obligation to contribute to the support of the child the amount called for by the divorce decree, and she says that "He agreed with my mother that he would start sending the baby money to support him." He did not keep this promise but, according to the wife, "wrote me a nasty letter."
On the recommendation of her lawyer the mother appeared before the Grand Jury of DeWitt County, Texas, and obtained from that body an indictment against the father for nonsupport. This was on June 26th, 1945. This indictment had no effect. He failed to contribute to the support of his child and was killed in the course of his employment one month and a half later, on August 12, 1945.
The record shows conclusively that the mother found it very difficult to support the child and, as a matter of fact, the child, at all times, remained in great need of support from his father.
It thus appears that from the time of the divorce until the death of the father, the mother exerted all reasonable effort to force the father to provide financial aid for the support of the child, and that during all that time it was not only the natural duty of the father to do so, but it was made doubly his legal duty by the divorce decree and, later, by the indictment of the Grand Jury.
Under such circumstances what liability, if any, in favor of the child, is placed upon the employer and the employer's insurers by the Louisiana Workmen's Compensation Laws?
The statute, in Section 8, subsection 2, provides that there shall be paid to the legal dependents "actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of three hundred weeks * * *." Act No. 242 of 1928, p. 358. The statute also provides that there is a conclusive presumption of dependency in favor of children living with the father, but in paragraph "D" of the same subsection of Section 8, it is provided that "in all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; * * *."
The child was not living with the father, consequently, there is no presumption that he was dependent upon the father and the question of dependency must be determined "in accordance with the facts * * *."
Our attention is further directed to another provision which appears in an amendment *Page 82 
to the statute, made by Act 85 of 1926, in which it is provided that:
"In all cases provided for under this Section the relation or dependency must exist at the time of the accident and at the time of death, and the mere expectation or hope of future contributions to the support of an alleged dependent by an employee, shall not constitute proof of dependency as a fact." § 8, subd. I, p. 118.
Counsel for plaintiff insist that, under these various provisions, the necessary dependency is shown where the child has actual need, and there is also shown the legal obligation to provide support and, that this is particularly true, where those in charge of the child are shown to have exerted all reasonable effort to force the parent to comply with this obligation.
Counsel for defendants, on the other hand, maintain that the necessary dependency is not shown unless it appears that prior to the death of the parent there had been actual contribution to the support of the child. They say that, regardless of the need and of the legal obligation and of the efforts made to force contribution for the prior support of the child, unless there were actual contributions, there can be no judgment for compensation.
There is no doubt in our minds that prior to the enactment of the amendment of 1926, the statute, with its amendments up to that time, had been interpreted as counsel for plaintiff would have us interpret it now.
We have several cases in mind. On Gregory v. Standard Oil Company of Louisiana, 151 La. 228, 91 So. 717, plaintiff places great reliance. In that case, a father and a mother brought suit to recover compensation for the death of a seventeen year old son. They were "in needy circumstances", but prior to his death the son had not made any "contributions" to them nor given them "pecuniary aid". He had left home "promising" to send them some of his monthly wages, but had been killed while at work.
The Supreme Court held that, nevertheless, the parents were actually dependent upon the son and that, therefore, they were entitled to compensation for his death. But at that time the statute had not been amended by the Act of 1926, and all that was required was that "the relation or dependency must exist at the time of the accident and at the time of death." See sub-paragraph "n" of paragraph 2 of Section 8 of Act 247 of 1920, p. 472.
We have no doubt that as a result of the Gregory case, which was decided by the Supreme Court in 1922, the Legislature, in 1926, enacted Act 85, in which that provision was amended, so that now it it is required that unless there is a conclusive presumption of dependency, as in the case of a wife and children living with the father, dependency must be proven to have existed "at the time of the accident and at the time of death, and the mere expectation or hope of future contributions * * * shall not constitute proof of dependency as a fact."
In Bradley v. Swift Company and Balthazar v. Swift Co., 10 La. App. 25, 119 So. 906, 120 So. 896, we held that a father, who had never been financially aided by his son, could, nevertheless, recover compensation for the death of the son because, under Article 229 of our Civil Code, a son is under the legal duty to contribute to the support of a parent in need, and, therefore, had the son not been killed the father would have continued to have the expectation that the son would comply with his moral and legal obligation and contribute to the support of the father.
But here too was a case in which the accident and death occurred prior to the enactment of the amendment of 1926.
Since the amendment we feel that the situation is quite different and, that, however great the need may be, there can be no recovery unless there is shown, not only the legal duty to contributions, but also the fact that actual contributions have been made.
Miss Mayer, in her excellent work entitled "Workmen's Compensation Law in Louisiana", seems to hold a different view. On page 108 of that book, as revised through December, 1936, she refers to the Gregory case and also to the Swift cause and, in a note, says that the Act of 1926 "is a rephrasing of the clause existing at *Page 83 
the time the Gregory case was decided". She then adds:
"Whether this addition works any change in the law under the Gregory case has never been passed on by the Court. In view of Act 229 of the Civil Code, proof of necessitous circumstances would seem to be tantamount to dependency whether actual contribution be made or not."
A case, in which the facts are almost identical with those before us, is Moy et al. v. Schuylkill Products Company et al.,209 La. 782, 25 So.2d 542, 543. The essential facts here are so nearly the same as those found in that case, that that decision, if not controlling here is, at least, most persuasive.
There, a wife and two minor children sought recovery in compensation for the death of the husband and father. The Court found that the father had not been living with the wife and the children and that, therefore, there was no conclusive presumption of dependency. The Court then investigated the evidence as to whether dependency had been shown by proof of the fact that the father, prior to his death, had been actually contributing to the support of the wife and children, and said that apparently the father and husband had failed to contribute to their support, and then the Court said, we think very clearly, that only by showing that the wife had actually "coerced" the husband into making contributions to their support, could the necessary dependency be shown.
"However unfair it may seem that these unfortunate children should be made to continue suffering because of the unworthiness of their father, simply because their mother or some one else on their behalf did not coerce him by means of legal proceedings to fulfill the duties legally imposed upon him as their father, our law-makers did not provide for such a case under our compensation law and we are powerless to prevent the perpetuation of this injustice that has been brought upon them through no fault of theirs and that must, in the future, be continued in similar instances until the legislature, in its wisdom, may see fit to correct the same, since this is a matter that falls exclusively within the province of that branch of our government."
We note the use of the word "coerce" and think that it connotes more than an unsuccessful effort to force a result. In other words, the Court did not mean that it will be sufficient if an attempt is made to force the husband or father to contribute. What it clearly means is that actual dependency is not shown by the mere effort to make the husband or father contribute. The attempt must produce the result and there must actually be the receipt of support or the dependency, which is necessary, is not shown, and when we again direct our attention to the amendment of the statute, does it not appear that that is actually what it expressly requires. It requires that there must not only be "legal dependency," which we understand to mean the right to demand support, but that there must also be "actual dependency," which we understand to mean that there must be a showing of the actual receipt of support. And when we couple this with the further requirement that "the mere expectation or hope of future contributions" shall not be sufficient, does it not become absolutely clear that there is no dependency shown except by proof that prior support was actually received.
The latest expression emanating from one of the Courts of this State concerning the question of whether need is sufficient to establish dependency where no actual contributions have been made, appears in Slaughter v. Liberty Mutual Insurance Company, La. App., 33 So.2d 86, 87, in which a wife, who, for many years, had been regularly supported by her husband, was abandoned by him. The Court found that for a year or two prior to the time at which he was killed he had not made any contributions to his wife's support, though she obviously was in desperate need of financial assistance. The Court said:
"Sub-section 2, paragraphs (A), (D) and (K) of Section 8 of the Workmen's Compensation Law, Act No. 20 of 1914, as amended by Act No. 242 of 1928, pp. 359, 361, is the law that controls in this case and is the law that the lower court applied to the facts. These provisions of the Workmen's *Page 84 
Compensation Law lay down the rule that where the wife was living with her husband at the time of the accident and death, a conclusive presumption arises that she was wholly and actually dependent upon him for support, but the law (par. D) goes farther and declares that in all other cases 'the question of legal and actual dependency in whole or part, shall be determined in accordance with the facts as they may be at the time of the accident and death.' The weakness of this law lies in the fact that a husband, with impunity, may choose and follow a course that makes it impossible, in the event of his death, for his abandoned wife (widow) to hold his employer responsible for payment of compensation that otherwise she could demand and receive.
"The trial judge, with deep feelings of regret, was, in view of the prevailing provisions of the Workmen's Compensation Law, reluctantly forced to deny to plaintiff the relief sought by her. He pertinently observed, as did the Supreme Court in Moy v. Schuylkill Products Company, et al., 209 La. 782,25 So.2d 542, 543, that the weakness of the law was a matter that addressed itself to the Legislative branch of the state government for attention, and not to the Judiciary."
In Edwards v. Standard Gin Mfg. Co., 12 La. App. 153,125 So. 593, our Brothers of the Second Circuit considered facts which presented the legal question now under consideration. A mother and father sought compensation for the death of a son on the ground that they had been dependent upon him for support. Several years before his death the son had contributed "something" to the support of his parents but, for at least two years prior to his death, he had made no contribution. The attention of the Court was called to our decision in Balthazar v. Swift, supra, and apparently it was argued that since there might have arisen the obligation in the son to support his aged parents, the necessary dependency was shown. The court "questioned" the correctness of our opinion in the Balthazar case, but said that even if that decision was, in fact, correct, the law that we had there applied had been changed by the amendment of 1926 (Act 85), and held that, under that amendment, it must be shown that actual prior contributions were made or the claim of dependency must fail.
We see no distinction here between the facts of this case and those there considered except that here the wife did exert all reasonable effort to "coerce" the father into contributing to the support of the minor. It is unfortunate that she was not successful, but we think that the law is plain that since she was not successful, in other words, since there were no contributions, the necessary dependency has not been shown.
We cannot do more for the minor than the law seems to us to warrant.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed