McBRIDE, Judge.
Plaintiff has appealed from a judgment dismissing her suit, which she had brought under the Workmen’s Compensation Law, LSA-R.S. 23:1021 et seq., claiming compensation at the rate of $16.25 for 300 weeks for the death of her husband, Carrol Ledet, which occurred as a result of injuries sustained by him on May 5, 1953, while driving an automobile from New Orleans to Shreveport for his employer, Fairchild Motor Corporation. The said employer and its workmen’s compensation liability insurer, Maryland Casualty Company, Inc., are-named as defendants. Plaintiff alleges that she was solely dependent upon the earnings-of Carrol Ledet for support.
-Carrol Ledet and Dorothy Mae Howard were married in November 1945 and lived together until some time in the latter, part of 1947. They then separated and Dorothy Mae Howard became the “common-law wife” of one Raymond Ball with whom she lived for about three years.
Carrol Ledet acquired a concubine named Sammy Lee Whitney, who says she was-with Ledet practically every night up to the date of his leaving on the fatal automobile trip. According to her testimony, it was Ledet’s custom to come to her home for supper and that he would “stay” with her sometimes until about midnight and on other occasions all night. Often he would take her to his room for the night.
Dorothy Mae Howard concedes that after the separation in 1947 she and Ledet never lived in the same house, but her contention is that during the year preceding Ledet’s death they continued to have marital relations and that they must therefore be considered as having been living together within the purview of the Workmen’s Compensation Law. She maintains she *478 is entitled to the compensation , provided for by the statute in favor of the widow of a deceased employee who is wholly dependent upon his earnings for support at the time of the accident which caused his death.
After leaving Raymond Ball, plaintiff went to live at the home of her mother at 1710 Lafayette Street. The record shows that Ledet lived at other addresses, the last being somewhere on South Claiborne Avenue. Plaintiff testified:
“We stayed in different places. I have gone to his room some nights and some nights we go to other places.”
In an effort to have her story that she •cohabited with Ledet corroborated, plaintiff produced five witnesses, two of whom were her father and mother. Willie Howard, the father, testified that Ledet would “be in and out of my home and he come there every evening when he get off of work.” Plaintiff’s mother said they “lived •together and went shopping together.” The ■others said they frequently saw Carrol Ledet and Dorothy Mae Howard together at 1710 Lafayette Street and one stated:
“I know them as good friends, and man and wife.”
This testimony of the plaintiff and her witnesses makes no more of an impression on our minds than it did on the mind of the trial judge who stated: “ * * * it is impossible for me to believe the testimony •of the plaintiff or that of any of the witnesses called on her behalf.” We believe ■that it was Sammy Lee Whitney in whom Ledet was interested rather than Dorothy .Mae Howard.
LSA-R.S. 23:1231 provides that for injury causing death within one year after the .accident there shall be paid to the legal •dependents of the employee, actually and wholly dependent upon his earnings for ■support at the time of the accident and ■death, benefits as thereinafter provided for. LSA-R.S. 23:1251(1) creates a conr •elusive presumption of total dependency •of a wife upon a husband with whom she is living at the time of his accident or •death.
Of course, the presumption cannot arise in favor of Dorothy Mae Howard in the instant case as we are convinced the parties were living separate and apart.
However, plaintiff also claims that she was wholly dependent upon the earnings of Carrol Ledet for support and that he in fact actually supported her:
“By given me an amount of money, not no certain amount, various amounts. Sometimes according to how much I need and what he had and could afford to give me.
******
“ * * * sometimes he would give me $10.00, $20.00, $15.00. I have seen when he would get a job he would give me as high as $30.00 and $35.00.”
The mother and father of plaintiff and her other witnesses claimed that they saw Carrol Ledet give varying sums of money to plaintiff and went into minute details as to the amounts they saw change hands. It would be taxing our credulity to expect us to believe that Ledet would turn over to Dorothy Mae Howard each week the major portion and sometimes all of his weekly wages. He earned $30 per week from which the employer withheld the income and social security taxes, etc. His room rent each week amounted to $5. Furthermore, Sammy Lee Whitney claims she came in for a substantial amount every payday.
Considering all of the circumstances, such as Ledet’s meager wage, the long separation, Dorothy Mae Howard’s long period of open consortium with another man, and Carrol Ledet’s concubine, it would be a rare occurrence indeed and contrary to human tendencies for Carrol Ledet to have continued to support plaintiff. See Woodard v. Murphy Iron & Boiler Works, La.App., 172 So. 397; Kilman v. Smith, La.App., 28 So.2d 499; Williams v. Armour Fertilizer Works, La.App., 45 So.2d 640.
The judgment appealed from is affirmed.
Affirmed.