GLADNEY, Judge.
This suit was brought to recover benefits under the Workmen’s Compensation Act. The death of Pink Hooper, Jr., on October 5, 1960, occurred in the course of his employment with Larry Jones, a subcontractor of T. F. Bedsole, who was engaged in the business of procuring pulpwood and insured by the Southern Pulpwood Insurance Company. Suit was instituted by *786 Pink Hooper, Sr. and Mary Hooper, the father and mother of the deceased employee, alleging that they were dependent upon their son for support. By supplemental petition Margaret I-Iooper Youngblood Joyner, as tutrix of the minor, Louis Youngblood, Jr., and Fred Joyner, as administrator of the estate of his minor daughter, Doretha Joyner, likewise claimed benefits under the statute, alleging the minors wholly dependent upon Pink Hooper, Jr., who was their uncle. Bed-sole and his compensation insurer are named as parties defendant. After trial on the merits, judgment was rendered rejecting the demands of Pink Hooper, Sr. and Mary Hooper, but awarding minimum compensation of $10.00 weekly in favor of the two minor children, during the period of statutory dependency. Suspensive and devolutive appeals were perfected on behalf of the defendants and devolutive appeals were taken by Pink Hooper, Sr. and Mary Hooper. The appellees have answered the appeal, asking that the award in favor of each minor be increased to weekly payments of $13.75 per week.
Through stipulation of counsel some of the issues were eliminated and at the time of trial there remained for judicial determination only questions relating to: whether or not the parents of the deceased were either wholly or partially dependent upon the deceased employee; whether or not the nephew and niece of the deceased employee were wholly or partially dependent; the amount of compensation, if any, to which each claimant is entitled; and what were the average earnings of the decedent?
Pink Hooper, Jr. was twenty-five years of age at the time of his death. He had never married and had lived with his father and mother all of his life, and was living with them at the time of his death. Pink Plooper, Sr., eighty-two years old at the time of trial, and his wife, Mary Hooper, seventy-two, lived in a seven-room house on forty acres of land, an interest in wnich Mary Hooper had inherited from her father. In addition to Pink Hooper, Jr., five children, three of a deceased son, Elton Hooper, and the two children of Margaret Hooper Youngblood Joyner, represented in this suit, lived in the family home. When Pink Hooper, Sr. reached the age of sixty-five he received welfare aid and Mary Hooper likewise received this aid when she became eligible. Accordingly, for some years prior to the death of Pink Hooper, Jr. his parents received from the welfare a total of $144.00 per month. Additionally, they received $8.00 per month for the rent of a house of the forty-acre tract, and they received also a social security check of $96.30 for the children of Elton Hooper, deceased.
Margaret Hooper was first married to Louis Youngblood, Sr., but this marriage was of short duration and shortly after Louis Youngblood, Jr. was born, she divorced her husband and left the child with Mary Hooper while she worked in Leesville. She then married Fred Joyner and the first-born of this marriage, Doretha Joyner, was also left with her mother. Fred and Margaret Joyner moved to New Orleans where they have since resided together and at the time this suit was instituted they were the parents of five children. Fred Joyner was gainfully employed, earning approximately $50.00 per week. Neither he nor Margaret made any contributions toward the maintenance of Louis Youngblood, Jr. or Doretha Joyner. Louis Youngblood, Sr. never made any contributions to the support of his child.
The household appeared to exist rather comfortably. There were no tax, rent or utility bills to pay, with the exception of electricity. The family owned some livestock, a Frigidaire, and deep freeze. The record indicates Pink Hooper, Jr. was more dependent than depended upon. He received his board and lodging and Mary Hooper attended to his washing and other needs. The earnings of the decedent were not established with certainty. Apparently, he obtained some jobs at public works until about four months prior to his death when he began cutting pulpwood for Larry Jones. *787 His cutting' partner was his brother, Ike Hooper, who customarily used the power saw. Shortly before Pink Hooper’s death Ike owned a power saw, but at the time of the accident he had borrowed one from his employer. Jones testified the amount of pulpwood he was allowed to cut depended upon a quota, which was ordinarily consumed in three or four days and that due to this restriction, Pink and Ike Hooper usually worked but three or four days per week, and Pink’s weekly earnings would vary from $20.00 to $25.00. The two workers were paid 85^ per pen of wood cut, which is a stack of pulpwood five or six feet high. Jones said that when the Hoopers worked full days the two would cut from seventeen to twenty pens per day. Ike Hooper testified that they cut thirty to thirty-five pens per day, but this was denied by Jones, who stated that payments by him were made to Ike ranging from $40.00 to $60.00 per week, which payments would be divided three ways and Pink would receive for his part one-third of this amount. Ike Hooper also testified he divided the compensation equally between himself and Pink Hooper, Jr. This procedure is contrary to custom and practice which permits the owner and operator of the chain saw to receive one-third of the wages, after payment of expenses, solely for the use and operation of the power saw. It is our finding that Pink Hooper, Jr. was earning on an average, not more than $30.00 per week. Since he earned this in four days, his daily wage should be fixed to be $7.50, which would result in a compensation rate of $29.25, this amount being sixty-five per cent of $45.00.
Proof as to the contribution of Pink Hooper, Jr. to the support of any of the claimants is most unsatisfactory. Out of his earnings of $30.00 per week he attempted to maintain an automobile, courted, and partially sustained himself, and remained in debt. On one occasion he was sued and forced to return an automobile he had bought. He owed Fred Chamberlin, the operator of a grocery store near the Hooper home, where his mother traded, a bill of $88.20, incurred between January 25, 1957, and March 16, 1958. These items were plainly for his own personal use. He made no effort to pay any part of the bill. With these demands for his income, serious doubt is cast upon his ability and disposition to set aside any of this income for the support of others. Pink Hooper, Sr. and Mary Hooper conceded they were not individually dependent for support upon their son and when questioned as to how much money Pink Hooper, Jr. had contributed to his support in 1960, Pink Hooper, Sr. testified that he did give him “maybe four bits or two dollars, maybe five dollars every once and a while.” Occasionally, he gave his father a shirt or some article of clothing, but there was no fixed or regular practice of contributing either to his father or mother. Mary Hooper testified that her son at one time gave her $250.00 when he got a compensation settlement and at another time $100.00 as a result of an additional compensation settlement. Neither of these donations could have occurred within the last two or three years of his life, and certainly not within the twelve months period prior to the death of Pink Hooper, Jr. Mary Hooper consistently declined to give in any degree of approximation the amount contributed by her son toward the family support. Thus, it is our appreciation of her testimony that her son made some few gifts of wearing apparel, or money for medicine and occasionally he bought some groceries. Her reluctance to give more definite information presents her testimony as being more or less untrustworthy. Ike Hooper testified that on some occasions Pink Hooper, Jr. purchased groceries. Margaret Joyner testified she had no knowledge of the contributions made by Pink Hooper, Jr.
Mary Hooper related a most unusual story which implied that Pink Hooper, Jr. assumed responsibility for the care of the two children, Louis Youngblood, Jr. and Doretha Joyner, when Pink Hooper, Jr. was about fourteen years of age. She re *788 lated that at that time the two children, who were then infants, had been left in her home by Margaret Joyner, who returned and expressed her intention of taking these two children away from the Hooper household. The witness then testified that Pink Hooper, Jr. had become so attached to the children that he asked Margaret Joyner to leave the children and he would assume the responsibility for their care. Mary Hooper obligingly then agreed to take care of the children until Pink Hooper, Jr. was in a financial position to assume the responsibility of the children, which, according to Mary Hooper, was realized when Pink Plooper, Jr., although still a minor, was able to earn wages. This story is incredible. Apparently the testimony was evidently intended for the purpose of indicating Pink Hooper, Jr. was the head of the household or family. Mary Hooper then pursued this theme by relating she had given the house to Pink Hooper, Jr. forasmuch as he had furnished some of the money, materials and labor which went into the building. Nor can we accept the verity of this statement. The record indicates the house was finished about 1955, at which time Pink Hooper, Jr. was hardly more than twenty years of age. It was not shown what his earning capacity was at that time, and we think that some proof along these lines should have been offered.
The testimony of Pink Hooper, Sr. leaves no doubt that Mary Hooper was the directing head of the family and as such, exercised superior authority in its management. It is argued that Pink Hooper, Jr. was the only gainfully employed member of the household, but a more important fact, so it seems to us, is whether or not he employed his earnings to any respectable or appreciable extent to meet any of the needs of subsistence for his parents, or his niece and nephew. After the death of Pink Hooper, Jr., the family continued to live in the same manner upon an income of $248.30 per month, from welfare, social security and rent. Its needs were met, as before, and seemingly any deprivation of income occasioned by the death of the employee had no economical effect.
The claimants herein, the father and mother, and nephew and niece of the deceased employee, seek recovery of benefits under the statute as dependents, and their rights are largely governed by certain provisions therein, particularly LSA-R.S. 23:1231, 1252, 1253 and 1254. The word “dependent” is not precisely defined in the act, but claimants must present proof of actual dependency as of the time of the death of the deceased employee and mere expectation or hope of future contribution does not constitute proof of dependency as a fact. Furthermore, a statutory provision, Section 1253, prescribes that since Louis Youngblood, Jr. and Doretha Joyner do not bear to the deceased the relationship of husband or widow, or lineal descendant or ascendant, or brother or sister, or child, they must, as a condition of dependency, establish membership of the family of the deceased employee.
In proof of dependency, the onus rests upon the claimants. Hamilton v. Consolidated Underwriters, La.App., 21 So.2d 432 (2d Cir.1944); Thompson v. Vestal Lumber & Manufacturing Company, 208 La. 83, 22 So.2d 842 (1944); Sandidge v. Aetna Casualty & Surety Company et al., La.App., 29 So.2d 522 (1st Cir.1947); Haynes v. Loffland Bros. Company, et al., 215 La. 280, 40 So.2d 243 (1949); and Lajaunie v. Rex Ice Cream Company et al., La.App., 62 So.2d 203 (1st Cir.1952).
Our jurisprudence, although recognizing that the Workmen’s Compensation Act is humane in its purpose and its application should be enlarged rather than restricted, nonetheless requires a claimant under the statute to make out a case to a legal certainty.
After full consideration of the record, we have substantial doubt as to whether any one of the claimants herein has established whole or partial dependency upon the *789 deceased employee, and we hold none has properly borne the onus of proof the law imposes. In reaching this conclusion, we find unbelievable the testimony of Mary Hooper that the deceased assumed or intended to assume any responsibility toward supporting the children of Margaret Joyner, and equally incredible the statement of Mary Hooper that she would under the circumstances related by her, donate her house to Pink Hooper, Jr. With due respect for her age, her testimony as to other facts is subject to question. The only other pertinent testimony came from Pink Hooper, Sr., and Ike Hooper, and we could hardly expect either to give testimony contrary to that of Mary Hooper. Such contributions, if made by Pink Hooper, Jr., we believe, were no more than tokens of gratitude to his mother to whom he owed a great deal and compensated but little in return. The employee’s earnings were modest, hardly more than sufficient to support himself. He owned and operated an automobile and seems to have had ample use for all of his income. Such contributions as may have been made followed no regular pattern and the record fails to even approximate the amount of his contributions within the year prior to his death. The income of Pink Hooper, Sr. and Mary Hooper was not less than $248.30 per month, and appears to have been adequate to support the entire household consisting of five children and three adults. With reference to the contributions of $250.00 on one occasion and $100.00 on another occasion, as testified to by Mary Hooper, following the settlement by her son for workmen’s compensation claims, these settlements occurred several years prior to the accident which resulted in the employee’s death. Also, we infer that any contributions of material or labor which may have been made when the house was built, occurred some five years prior to the employee’s death. These facts do not constitute contributions toward the support of claimants as of the time of his accident. At most they are relevant to show character. It is our finding that none of the claimants herein was actually dependent upon the deceased worker at the time of his death.
The facts as established disclose none of the claimants was in need of support from the deceased employee and such gifts by the deceased employee to his mother and father were not appreciable or respectable enough to constitute proof of dependency as a fact. Woodard v. Murphy Iron & Boiler Works, Inc., 172 So. 397 (Orl.App.1937); Moy v. Schuylkill Products Company, 209 La. 782, 25 So.2d 542 (1946); Kilman v. Smith, La.App., 28 So.2d 499 (2d Cir.1946); Haynes v. Loffland Bros. Company, 215 La. 280, 40 So.2d 243 (1949); Williams v. Armour Fertilizer Works, Inc., 45 So.2d 640 (Orl.1950); Howard v. Maryland Casualty Company, 84 So.2d 477 (Orl.1956); and Hudson v. Central Culvert Corporation et al., La.App., 108 So.2d 253 (2d Cir.1958).
For the foregoing reasons the judgment as rendered in favor of plaintiff-appellee Margaret Blooper Youngblood Joyner, tutrix of the minor, Louis Youngblood, Jr., and as rendered in favor of Fred Joyner, administrator of the estate of his minor daughter, Doretha Joyner, against the defendants, Southern Pulpwood Insurance Company and T. F. Bedsole, awarding dependency compensation, is annulled, reversed and set aside, and plaintiffs’ demands are rejected.
It is further ordered that the judgment be affirmed in all other respects.
All costs of both courts are taxed against plaintiffs.