DOMENGEAUX, Judge.
This is a suit brought under the Louisiana Workmen’s Compensation Law *208 (LSA-R.S. 23:1021 et seq.) by Edna Mc-Dermott wherein she seeks maximum benefits and statutory penalties and attorney fees for the death of her son, Calvin Jones, which resulted from accidental injuries sustained by him in the course and scope of his employment with Warren Funel, d/b/a Beverage Distributing Company. Made defendants were the said employer and his compensation insurer Coal Operators Casualty Company. Calvin Jones was injured on November 7, 1966, and died as a result of those injuries on November 28, 1966. Defendants filed exceptions of No Cause or Right of Action to the plaintiff’s petition on the ground that the decedent was an acknowledged illegitimate child of the plaintiff and that she was thus precluded from recovery for his death under the Compensation Act. These exceptions were overruled. At the trial on the merits the decedent’s injuries and subsequent death were stipulated to, as well as the accident having occurred while the decedent was in the course and scope of his employment with defendant Warren Funel, d/b/a Beverage Distributing Company, and that the work performed by Calvin Jones was hazardous within the contemplation of the Louisiana Workmen’s Compensation Law. It was further stipulated that the decedent had received from defendant insurer the total sum of $110.83 as weekly compensation from the time of the injury to the time of his death and also that said insurer had paid the sum of $600.00 for funeral expenses.
The lower court rendered judgment in favor of the plaintiff mother and against the defendants awarding her compensation benefits in the amount of $10.00 per week for 400 weeks commencing November 28, 1966, with legal interest on each past due installment from its due date until paid, less a credit of the weekly compensation which the company had previously paid. The plaintiff’s demands for penalties and attorney fees were rejected. From this adverse judgment the defendants have perfected a devolutive appeal to this court.
This appeal presents two issues, namely:
1) Can a mother, such as plaintiff herein, recover workmen’s compensation benefits upon the death of her son although he was born out of wedlock ?
2) If the answer is in the affirmative, was she dependent in fact upon her son for support at the time of his death, and, if so, what was the extent of her dependency ?
The evidence in this case shows that the plaintiff Edna McDermott, without benefit of marriage, lived with one Louis Jones for some ten years at 2326 Toledano Street in the City of New Orleans. Her son, the decedent Calvin Jones, was conceived and born during that period and according to a certificate of Notification of Birth Registration, which was admitted into evidence, one Calvin Jones is shown to have been born on January 30, 1943, the mother’s name being “Edna McDonald” and the father’s name being “Louins Jones.” The certificate, on its face was shown to have been issued to “Edna McDonald, 2326 To-ledano Street, New Orleans.” An authenticated certificate from the pastor and church clerk of the Stronger Hope Baptist Church shows that “Calvin Jones, formerly of 2324 South Johnson Street, the son of Mrs. Edna McDermott was baptized into the Christian faith in the above named church, by the late Rev. J. J. Carter, Jr., on the second Sunday of June, the Year of Our Lord One Thousand Nine Hundred Fifty Eight (1958).” The parties stipulated to the authenticity of the document.
The testimony adduced on the subject together with the facts and circumstances shown in the record makes it clear that the plaintiff Edna McDermott, is the same person shown on the Notification of Birth Registration to be the mother of Calvin Jones, and that the “Louis Jones” allegedly the sire of the decedent Calvin Jones, is the same person carried on the said certificate as “Louins Jones.”
*209 Plaintiff and Louis Jones discontinued their common law union some years after Calvin was born (the precise time is not clear; however, it appears that Calvin was quite young) and plaintiff resided at different locations during the following years throughout which time the decedent, her son Calvin, always resided with her.[1] The evidence proves that the plaintiff Edna McDermott always earned her own living, and was regularly employed as a domestic, and raised her son, without any financial help from the alleged father Louis Jones. At the time of the accident and resulting death of Calvin Jones, the plaintiff earned a regular income of between $40.00 to $42.-00 per week from various persons for whom she worked as a domestic. She rented the home in which she and Calvin lived, paid the rent and furnished the necessities of life for herself and two minor daughters who also lived with her.
The decedent at that time received $55.-00 per week from his employment with the defendant Funel.
Plaintiff testified that she paid $30.00 per month for rent, approximately $12.00 per week for groceries, approximately $12.-00 per month for utilities, and except for clothing and miscellaneous expenses, this was the extent of her living expenditures. She testified that her son Calvin always lived with her and that she washed his clothes and furnished him room and board. She stated that Calvin would give her $15.-00 to $20.00 per week in cash. All of the furniture in the household including radio and television was paid for by her and belonged to her.
Under the Louisiana Workmen's Compensation law any death benefit which may be paid is conditioned upon actual dependency (LSA-R.S. 23:1231). The dependency may either be whole or partial except in certain persons who are conclusively presumed to be wholly and actually dependent upon the decedent under the provisions of LSA-R.S. 23:1251, these persons being a wife, upon a husband with whom she is living at the time of his accident or death, a husband mentally or physically incapacitated from wage earning, upon a wife with whom he was living at the time of her accident or death, and a child under the age of 18 years (or over 18 years of age if physically or mentally incapacitated from earning), upon the parent with whom he is living at the time of injury to the parent. Under LSA-R.S. 23:1021(3), a child is defined as follows :
“ ‘Child’ or ‘Children’ covers only legitimate children, stepchildren, posthumous children, adopted children, and illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204, and 205.”
Under Article 203 of the Louisiana Civil Code:
“The apknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father and mother or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.”
In the Louisiana Supreme Court case of Thompson v. Vestal Lumber & Mfg. Co., 208 La. 83, 22 So.2d 842, the right of ille-gitimates to recover death benefits was established if actual dependency is proved. It was shown therein that the crucial test for recovery of death compensation benefits was actual dependency upon the deceased, rather than a legalized filial relationship. Thompson held that the phrase “legal dependent” used in the statute conferring the right to death benefits (LSA-R.S. 23:1231 et seq.) does not denote legitimate relatives only but rather the phrase encompasses all—
*210 “ * * * dependents who are legally-entitled to compensation under the statute. The term is applicable to actually dependent members of the family of the deceased, as well as to the surviving relations who are conclusively presumed to have been dependent upon his earnings for support.”
In expressing an analogy between the Louisiana Workmen’s Compensation statute and the Louisiana Inheritance Laws, and in referring to the strict interpretation of the Compensation Act in the earlier Second Circuit Louisiana Appeal Court case of Ellis v. Union Compress & Warehouse Co., 178 So. 726, it was stated in Thompson, supra, as follows:
“The laws of inheritance, which governed the decision in the Succession of Lacosst, * * * have nothing whatever to do with the right of a surviving dependent member of the family of a deceased employee to receive compensation under the Employer’s Liability Act.”
We readily conclude under the rationale of Thompson (without the necessity of seeking guidance from the recent United States Supreme Court decision of Glona v. American Guarantee Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441) that a mother can recover workmen’s compensation benefits upon the death of her son, although he was born out of wedlock, provided that he was acknowledged by her under the provisions of LSA-C.C. art. 203 (subject to the conditions of Articles 204 and 205) and further provided that she was dependent upon him either in whole or in part. We find it expedient and proper to consider first the question of whether or not plaintiff herein, Edna McDermott, was dependent in whole or in part upon the decedent, since if she was not, it will not be necessary to determine whether or not she acknowledged the decedent as herein-above shown to be necessary.
In order for the plaintiff to prove her dependency under the Compensation Act, she must base the thrust of her case on the provisions of LSA-R.S. 23:1252 and LSA-R.S. 23:1254, which provide as follows :
“Determination of dependency in other cases
“In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; in such other cases if there are a sufficient number of persons wholly dependent to take up the maximum compensation, the death benefit shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof.”

“Dependency at the time of accident and death
“In all cases provided for under this Part the relation or dependency must exist at the time of the accident and at the time of death, and the mere expectation or hope of future contribution to support of an alleged dependent by an employee, shall not constitute proof of dependency as a fact.”
Clearly, then, plaintiff must prove the need for support, and that support was actually given, for she is not afforded the benefit of the conclusive presumption of dependency as provided in LSA-R.S. 23:1251. All of the testimony relating to the plaintiff’s need for support is contained on pages 8 and 9 of the transcript of the testimony. Appellee’s testimony on this point upon interrogation by her attorney was as follows:
“A. Well, most of the time I didn’t work every day. I was working one place three days and another place one day, and another place one day. I was making $7.00 at two places and $9.00 for the three days’ work.
*211 “Q. It was $27.00 and $14.00; $41.00 a week, approximately?
“A. Yes sir.
“Q. Tell us, please, at that time what was your rent per month?
“A. Paying $30.00 a month.
“Q. And can you tell us, please, what did you pay, approximately!' for groceries per week ?
“A. From $10.00 to $12.00.
“Q. And what were your other expenses; for instance, what did you pay, approximately, for utilities ?
“A. Well, in the wintertime I paid more, around $12.00, $14.00; summertime is from $8.00 to $10.00.
“Q. And generally was that all of your expenses, other than clothing?
“A. Yes sir.”
Thus, we see that by the plaintiff’s own testimony she was entirely self-supporting. She paid $30.00 a month for rent and $52-00 a month for food (this is the maximum amount estimated by her). From a reading of the transcript, it is impossible to tell whether the utilities that were paid by the claimant were computed on a weekly or monthly basis. She stated that in the wintertime she paid around $12.00 to $14.00 and in the summertime $8.00 to $10.00. Apparently, she is referring to utility payments on a monthly basis, for this is the common and usual manner in which these are paid. But, in any event, if she were given the benefit of the utility payments being made on a weekly basis, her monthly expenses are substantially less than her monthly earnings of approximately $175.00 per month. It is therefore obvious that appel-lee failed to prove that she was dependent in fact on her son for support. Actually, the testimony of appellee and her witnesses in relation to the amount of weekly contributions allegedly made to her by’ her son leaves much to be desired. Appellee stated that her son would give her “$15.00 or $20.00 per week in cash.” This was all the proof offered by her on the question of support. To corroborate this contention, she called Henry Robertson to testify that the deceased “used to bring in $15.00 or $20.00 per week.” He knew this because the decedent left money with him “a couple of times.” Appellee also called Mrs. Emily DeLong who stated that the deceased gave his mother money but she didn’t know how much, but that sometimes the deceased would leave cash money with her for delivery to his mother. Appellee also called her mother to substantiate the fact that she received support from her deceased son. Appellee’s mother knew that Calvin gave his mother money because, as she testified:
“Yes, because I used to get at him to help her. When he used to come out to see me, I asked him, I said, ‘Did you give your mother money’ ? He said, ‘Yes, I gave Mama her money.”
Quite possibly the reason that appellee fell short in her proof on this point is the fact, as was established by her own testimony, that she was not in truth and in fact dependent ' upon her minor son for support. Therefore, inasmuch as she was self-sufficient, she could not prove payment by the deceased of grocery bills and other items as is usually the case. So, in the final analysis, on the proof of support, the record reflects only the self-serving testimony of appellee that her son gave her “$15.00 or $20.00 a week in cash,” corroborated by one neighbor who stated that the deceased left this amount with him once or twice to take to the appellee, by another neighbor who did not know the amount of money involved but who occasionally was left money to deliver to the mother, and the mother of the appellee who knew that the deceased supported his mother because the deceased told her so. But even assuming that the decedent did give his mother $15.00 to $20.00 per week, in view of her independent employment and income, and her testimony concerning her monthly expenditures it cannot be said that she was *212 actually dependent upon him, wholly or partially.
The word dependent connotes one who looks to another for support in whole or in part, one who is in fact dependent, one who relies on another for the reasonable necessities of life.
In proof of dependency, the onus rests upon the claimant. Hooper v. Southern Pulpwood Insurance Company, La. App., 140 So.2d 785 (and cases cited therein). Our jurisprudence, although recognizing that the Workmen’s Compensation Act is humane in its purpose, and its application should be enlarged rather than restricted, nonetheless requires a claimant under the statute to make out a case to a legal certainty.
Although the plaintiff’s earnings are modest there was no showing that they were not sufficient to meet her needs. By her own statement her monthly expenditures were less than her income. She owned and paid for her furniture, radio and television. These movables were clear of debt. She was otherwise also clear of debt.
After full consideration of the record herein, we conclude that the plaintiff has failed in her burden of proving dependency upon the decedent, wholly or partially, and accordingly she is not entitled to the death benefits which she has sought in this case. Our ruling in this regard makes it unnecessary to determine whether the plaintiff acknowledged the decedent which, as indicated hereinabove is the first requirement needed to qualify her for dependency benefits under the facts of this case.
In denying compensation benefits we are not unmindful that her earned income is in the low category but we are equally aware of the heavy burden which rests in our courts to apply the laws as they are written. We have compassion for her but find ourselves unable to give her aid. We recognize the liberality of the Compensation Act but nonetheless cannot lose sight of plaintiff’s burden to preponderate the evidence. We cannot interpóse dependency when the record does not bear it out, nor can we credit her with material needs which she has not shown to exist and upon which the evidence is silent. It was incumbent upon her, and she had every opportunity to prove dependency upon her son, yet she failed to do so.
For the reasons assigned, the judgment appealed from is reversed and set aside, and accordingly it is now ordered, adjudged and decreed that there be judgment in favor of defendants Warren Funel d/b/a Beverage Distributing Company and Coal Operators Casualty Company and against plaintiff Edna McDermott, rejecting plaintiff’s demands and dismissing her petition. Costs in both courts are assessed against plaintiff-appellee.
Reversed and rendered.

. Except for intermittent periods after he reached the age of 17 years, when he kept company with members of the opposite sex, but would nevertheless come to his mother’s home for meals during these excursions.