Daniel A. Slaughter, the husband of plaintiff, was accidentally killed while performing the duties of a contract of hiring with the defendant, R.D. White, who was engaged in a hazardous business, in the Parish of Concordia, Louisiana. She sues, as surviving widow, to recover workman's compensation for three hundred (300) weeks at the rate of $16.25 per week. White and his insurer, Liberty Mutual Insurance Company, are sued. Plaintiff does not affirmatively allege that to the time her husband was killed they were living together as man and wife, nor that she was then dependent upon him for support.
The suit is resisted on the ground that for two years or more prior to Slaughter's death he and plaintiff had lived separate and apart; that for said period he lived in concubinage with another woman, and that during this time plaintiff was not dependent upon him for support and actually received no support from him.
The lower court, in written reasons therefor, sustained the urged defense and dismissed the suit. Plaintiff appealed.
Plaintiff and the deceased were married in the year 1908 and for the ensuing thirty-five *Page 87 
years, so far as the record discloses, their marital relations suffered no trying experiences. He regularly followed public works to earn subsistence for himself, his wife and a large number of children that blessed their union. In the main, this was a hard life, but she invariably accompanied him from place to place and shared with him the vicissitudes and hardships that normally attend those who engage in this line of work for a living. In 1943 he rented land and farmed in Catahoula Parish. By this time all the children, except the two younger sons, had reached majority and were living to themselves. The two sons assisted their father in the production of the crop, but were inducted into the military service in the latter part of that year. The deceased's health was bad, and being deprived of his sons' assistance, he abandoned farming and returned to public works, leaving plaintiff at home to liquidate the farm assets and pay debts. The evidence warrants the conclusion that the deceased, when he abandoned the farm, had a fairly well formed purpose to also abandon his wife.
[1] The learned trial judge, in a well written and reasoned opinion, has correctly stated the facts, resolved the issues in the case and has applied the law appropriate thereto. With approval, we quote in part said reasons, to-wit:
"After payment of the farm debts, it appears that the wife had left for her use and support, some small proceeds from the sale of the work stock and hogs and some corn, which she states she used during the years 1944 and 1945. While it appears that deceased, from time to time, made visits to his wife, discussed business with her, and apparently were friendly one with the other, there is no evidence of any renewal of marital relations, nor any evidence that he ever gave her the least financial support after their separation, other than what she salvaged from the farm after payment of the debts, as aforesaid.
"On this issue, we have plaintiff's testias follows:
" 'Q. Mrs. Slaughter, did you consider that you and your husband were separated at the time of his death? A. Well he told me one time he was not coming back any more, when he was home on a visit, but he did; he came back just the same as he did before; he didn't come home that I didn't ask him to come back home and stay with me like a man should stay with his wife.
" 'Q. When was that, do you remember? A. Two years ago, this past Fall, and he didn't say he was quitting me or anything; said he was not coming back.' "
"On cross examination, plaintiff further testified that when her husband visited her during the two years' period prior to his death, he 'would make his rounds to see all of us and would stay with one of the children at night.'
"The evidence is conclusive that on and after December, 1943, the time of the separation, the husband, at no time made any contributions to his wife's support from his occupation and labor. It is further conclusive that she, the plaintiff, was supported and maintained solely throughout this period from allotments and pensions from her sons in service and from whatever funds and farm produce remaining from the liquidation of the farming operations aforesaid. The evidence is also conclusive that at the time of his death and for a year or more prior thereto, the deceased was using the whole of his wages in maintaining a home for himself and his concubine, Mrs. Miller, with whom he was living and whom he represented to his employer as his legal wife.
"Applying the above findings and conclusions of fact to the law applicable, above cited, the Court concludes that the conjugal relationship between plaintiff and the deceased had been severed prior to and continued severed until the time of death."
Sub-section 2, paragraphs (A), (D) and (K) of Section 8 of the Workmen's Compensation Law, Act No. 20 of 1914, as amended by Act No. 242 of 1928, pp. 359, 361, is the law that controls in this case and is the law that the lower court applied to the facts. These provisions of the Workmen's Compensation Law lay down the rule that where the wife was living with her husband at the time of the accident and death, a conclusive presumption arises *Page 88 
that she was wholly and actually dependent upon him for support, but the law (par. D) goes farther and declares that in all other cases "the question of legal and actual dependency in whole or part, shall be determined in accordance with the facts as they may be at the time of the accident and death." The weakness of this law lies in the fact that a husband, with impunity, may choose and follow a course that makes it impossible, in the event of his death, for his abandoned wife (widow) to hold his employer responsible for payment of compensation that otherwise she could demand and receive.
[2] The trial judge, with deep feelings of regret, was, in view of the prevailing provisions of the Workmen's Compensation Law, reluctantly forced to deny to plaintiff the relief sought by her. He pertinently observed, as did the Supreme Court in Moy v. Schuylkill Products Company et al., 209 La. 782,25 So.2d 542, 543, that the weakness of the law was a matter that addressed itself to the Legislative branch of the state government for attention, and not to the Judiciary.
In the Moy case the surviving widow sued in her own behalf and that of her minor children, issue of her marriage with the deceased workman. The court, in passing, said:
"However unfair it may seem that these unfortunate children should be made to continue suffering because of the unworthiness of their father, simply because their mother or some one else on their behalf did not coerce him by means of legal proceedings to fulfill the duties legally imposed upon him as their father, our lawmakers did not provide for such a case under our compensation law and we are powerless to prevent the perpetuation of this injustice that has been brought upon them through no fault of theirs and that must, in the future, be continued in similar instances until the legislature, in its wisdom, may see fit to correct the same, since this is a matter that falls exclusively within the province of that branch of our government."
In that case the separation had existed for ten years, whereas in the present case the parties had been separated not nearly so long. But, as we view the law, the length of time over which the separation has extended, is not necessarily of the essence. The fact of living apart for a time, coupled with the determination by the husband to preserve that status, plus the failure on his part to render support for his wife, are the controlling factors in such a case.
Defendant cites and, to some extent, relies upon the case of Milton v. Long-Bell Lumber Company, 165 La. 336-340,115 So. 582. In that case the separation and failure to support was for a period of only three or four months, but compensation was disallowed. The court did find that the separation was by mutual consent but we do not believe the court intended to hold primarily that because of this the wife waived or lost her right to claim compensation. This fact was referred to more to give force to the contention of separation and lack of support on the husband's part.
The lower court manifestly rendered proper judgment in this case and, for the reasons herein assigned, the judgment appealed from is affirmed with costs.
KENNON, J., absent.