691 So.2d 97 (1997)
Barney SILK, Sr. (Kira Silk, individually and on behalf of Minor, Karolina Silk), Plaintiffs-Appellants,
v.
Michael SILK, Defendant-Appellee.
No. 29107-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1997.
Opinion Granting Reconsideration April 2, 1997.
C. Daniel Street, Monroe, for Appellant Kira Silk, Individually and on behalf of the minor, Karolina Silk.
Sammie Henry, Baton Rouge, for Louisiana Worker's Compensation Corporation.
Before MARVIN, C.J., and GASKINS and PEATROSS, JJ.
GASKINS, Judge.
This is a workers' compensation suit filed by Kira Silk, widow of Barney Silk, Sr., individually and as tutrix of her minor daughter, Karolina, seeking benefits for herself and her daughter as a result of the death of her husband. The hearing officer rejected the plaintiff's claims, instead awarding a parental lump sum benefit to the decedent's mother, Vera Silk. The plaintiff appealed the hearing officer's decision and for the following reasons, we affirm.[1]

FACTS
The decedent, Barney Silk, Sr., was married to Kira Silk on June 27, 1987, and they had one child, Karolina, born on February 1, 1989. The decedent also had a minor son from a previous marriage, Barney Silk, Jr. On June 28, 1994, approximately three months prior to his death, Barney Silk, Sr. left the matrimonial domicile.
The decedent was killed on September 29, 1994, while operating a cotton picker for the defendant, Michael Silk. The decedent got off his cotton picker to clear the machine of debris when another cotton picker operated by Eric Silk struck a power line, knocking *98 the line down onto Barney Silk's picker, electrocuting him.
On May 18, 1995, Kira and Karolina filed to receive workers' compensation death benefits, claiming that they were solely dependent upon the decedent for support. The defendant's insurer, Louisiana Workers' Compensation Corporation (LWCC), refused to pay the claim because the decedent and the claimants were not living together at the time of the death and the claimants were receiving public assistance. Kira and Karolina then sought penalties and attorney fees, arguing that LWCC was arbitrary and capricious in denying their claim.
On September 25, 1995, Barney, Jr. filed a claim for death benefits and his grandmother, Vera Silk, the mother of the decedent, also filed a claim on September 8, 1995, to receive the parental lump sum death benefit. These claims were consolidated with those of Kira and Karolina Silk.
The consolidated claims were heard by a hearing officer on March 7, 1996. Kira Silk testified that she and the decedent had been separated approximately three months at the time of his death, but that he visited about three times per month and that they had discussed reconciliation. Mrs. Silk stated that even though she had obtained a restraining order against the decedent, she had not filed for a divorce. She also testified that she had not worked outside the home since 1991 and that she and her daughter were dependent upon the decedent for support. She claimed that all furnishings and appliances in their home were purchased by the decedent and that all food in their freezer, which they were still eating at the time of the death, was purchased by the decedent. Mrs. Silk acknowledged that the decedent was living with another woman at the time of his death and the decedent had not contributed to the support of his wife and daughter since his departure. They were receiving public assistance when Barney Silk, Sr. was killed.
Barney Silk, Jr. was living in a juvenile detention home at the time of his father's death. Barney, Jr. testified that his father made some payments to the home and gave him spending money on a regular basis, but his father did not make any more payments after his separation from Kira.
Gail Clausen, a claims representative with LWCC, testified that she investigated the claims of Kira and Karolina and determined that they were not living with the decedent at the time of his death and that he was not contributing to their support. Ms. Clausen also learned that Barney, Jr. was residing in a detention home and was not being supported by his father. The claims of Kira and Karolina were denied by LWCC because they were not living with the decedent and were not actually supported by him at the time of his death. The claims of Barney, Jr. and Vera Silk were also denied by LWCC because, at that point, there were competing claims for benefits.
After hearing the evidence and testimony presented, the hearing officer rejected the claims of Kira, Karolina and Barney Silk Jr., citing statutory authority that those entitled to death benefits are legal dependents actually and wholly dependent upon the employee's earnings for support at the time of the accident and that a spouse and minor child are presumed to be dependent upon the decedent if living with him at the time of the death. The hearing officer found that these claimants were not living with the decedent at the time of his death. Therefore, the presumption of dependency did not apply. The hearing officer also found that Kira, Karolina and Barney Silk, Jr. failed to show that they were actually dependent upon the decedent. The hearing officer found that the sole support of Kira and Karolina was public assistance and that Barney, Jr. was in a detention facility and was not supported by his father at the time of the death. Therefore the court found that, because the decedent had no dependents, his mother, Vera Silk was entitled to the lump sum payment of $20,000 to the parent of a deceased worker. Kira and Karolina Silk appealed the hearing officer's decision, arguing that they were entitled to death benefits and penalties and attorney fees. Barney Silk, Jr. did not appeal the denial of his claim.

DEATH BENEFITS
The appellants contend that the hearing officer erred in rejecting their claim for *99 workers' compensation death benefits and instead awarding the parental lump sum benefit to the decedent's mother, Vera Silk. The appellants argue that they were legally dependent upon the decedent at the time of his death and are entitled to workers' compensation benefits. Kira and Karolina contend that until three months before the decedent's death, they were completely dependent upon him for support. They acknowledge that the defendant provided no support for them for three months prior to his death and that they were receiving public assistance. However, they contend that these facts should not defeat their claim that they were actually and wholly dependent upon the decedent for support. The appellants contend that under La. R.S. 23:1231(B), dependency may be established by showing that contributions to support were made within one year prior to the death. This argument is without merit.
When an employee dies from injuries sustained within the course and scope of employment, death benefits may be paid to the dependents or the surviving parents of the decedent. La. R.S. 23:1231 provides as follows:
A. For injury causing death within two years after the last treatment resulting from the accident, there shall be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as provided in this Subpart.
B. (1) If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.
(2) However, if the employee leaves no legal dependents entitled to benefits under any state or federal compensation system, the sum of twenty thousand dollars shall be paid to each surviving parent of the deceased employee, in a lump sum, which shall constitute the sole and exclusive compensation in such cases.
Persons conclusively presumed to be dependent upon the employee are defined in La. R.S. 23:1251:
The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee:
(1) A surviving spouse upon a deceased spouse with whom he or she is living at the time of the accident or death.
(2) A child under the age of eighteen years (or over eighteen years of age, if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the injury of the parent, or until the age of twenty-three if enrolled and attending as a full-time student in any accredited educational institution.
Because Kira and Karolina were not living with Barney Silk, Sr. at the time of his death, they do not benefit from the conclusive presumption of dependency established by La. R.S. 23:1251. It is their burden to prove actual dependency. Hunt Plywood, Inc. v. Estate of Davis, 26,161 (La.App. 2d Cir. 10/26/94), 645 So.2d 248, writ denied 94-2871 (La.1/27/95), 649 So.2d 388. The question of actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death. La. R.S. 23:1252; Hurks v. L.H. Bossier, 367 So.2d 309 (La.1979). The relation or dependency must exist at the time of the accident and at the time of death, and the mere expectation or hope of future contribution to the support of an alleged dependent by an employee shall not constitute proof of dependency as a fact. La. R.S. 23:1254; Lathrop v. Hercules Transportation, 95 0936 (La.App. 1st Cir. 12/15/95), 666 So.2d 395. However, a showing of actual dependency does not require proof that the claimant would have lacked the necessities of life without decedent's contributions, but only that the claimant relied upon the received monetary allowance to maintain his or her accustomed standard of living. Hurks v. L.H. Bossier, supra; Hunt Plywood, Inc. v. Estate of Davis, supra.
*100 After actual dependency has been shown, the question becomes whether the claimant totally or partially relied upon the decedent's assistance. Total dependency exists where an individual relies for support entirely upon contributions from the deceased employee. However, where that aid is only one of several sources from which the claimant derives support, the dependency will be classified as only partial. Hunt Plywood, Inc. v. Estate of Davis, supra, and authority cited therein. Dependency is a question of fact. The hearing officer's findings should not be disturbed on appeal absent manifest error or clear wrongness, even when a conflict in the evidence exists. Hunt Plywood, Inc. v. Estate of Davis, supra.
The hearing officer found that because at the time of the death, the plaintiffs were not depending upon the decedent for support, then they were not entitled to recover death benefits. The plaintiffs contend that the hearing officer erred in so finding. They argue that if the decedent contributed anything to the support of spouse or children within one year of the death, then, at least partial dependency was established, citing La. R.S. 23:1231(B), set forth above. They also cite 2 Wex S. Malone and H. Alston Johnson, III, Workers' Compensation Law and Practice § 304, in 14 Louisiana Civil Law Treatise (3d ed.1994) which provides:
In theory the surviving spouse and children who fail to establish that they were living with the deceased at the time of accident or death are still entitled to compensation if they can show total or partial dependency in fact. As a practical matter, however, it is rare that the surviving spouse who has failed to establish that he or she was living with the deceased has been able to prove dependency. This is because dependency cannot be established merely by showing that the support of the deceased was needed by the claimant. The Act requires further proof that "contributions" to support were actually made by the deceased during the year preceding death.
The plaintiffs also rely upon the jurisprudence cited in the treatise which includes Hudson v. Central Culvert Corp., 108 So.2d 253 (La.App. 2d Cir.1958), Moy v. Schuylkill Products Co., 209 La. 782, 25 So.2d 542 (1946) and Slaughter v. Liberty Mutual Insurance Company, 33 So.2d 86 (La.App. 2d Cir.1947). The plaintiffs further cite Lathrop v. Hercules Transportation, 95 0936 (La.App. 1st Cir. 12/15/95), 666 So.2d 395 and Hunt Plywood, Inc. v. Estate of Davis, supra, in support of their argument that they were dependent upon the decedent even though he had contributed nothing to their support for several months and that, simply because they received public assistance, that fact should not preclude a finding of dependence upon the decedent.
We find that the jurisprudence and the authority cited by the plaintiffs does not support their argument that dependency must be found if any support has been contributed to spouse or children within one year prior to the employees death. La. R.S. 23: 1231(B) merely provides a formula for determining the amount of benefits if a dependent is partially dependent upon the employee for support. Hudson, Moy and Slaughter do not hold that dependency is established if any contributions at all are made within one year prior to the employee's death. In each of these cases, it was held that the deceased employee was not providing support for wife and children and therefore they were not entitled to death benefits, in spite of the harshness of that result.
Lathrop v. Hercules Transportation, supra, and Hunt Plywood, Inc. v. Estate of Davis, supra, are distinguishable from the facts of the present case. In Lathrop the decedent had been ordered to pay child support for his minor daughter, but had made no payments for seven months prior to his death. The decedent's employer filed a motion for summary judgment arguing that, because the decedent was not actually paying support at the time of the death, the child was not dependent upon him and not entitled to death benefits. The hearing officer granted the motion for summary judgment. The appellate court reversed, finding that summary judgment was not warranted. The appellate court noted that the child had received about $800 from the father in the year prior to his death and received an income tax *101 refund from his estate after his death. The court stated that it could not be said that the child was not dependent upon the father's earnings at the time of his death. The court then reviewed the standard for evaluating motions for summary judgment and held, "Under the facts presented there can be dependency and defendants should not prevail on their motion for summary judgment as a matter of law."
In Hunt Plywood, Inc. v. Estate of Davis, supra, two children of the decedent were found to be partially dependent because the decedent regularly contributed small amounts of money and bought medicine and diapers for each child every month. Partial dependency was found by this court even though the children were also receiving public assistance. See also Winn v. Thompson-Hayward Chemical Company, 522 So.2d 137 (La.App. 2d Cir.1988). In the present case, at the time of his death, the decedent was not making any contributions to the support of his wife and daughter.
As stated above, to establish dependency, the claimant must show that he or she relied upon the received monetary allowance to maintain his or her accustomed standard of living. Total dependency is shown when the claimant relied entirely upon contributions from the employee. Partial dependency is shown where the aid was one of several sources upon which the claimant relied for support. The dependency, whether partial or total, must exist at the time of the accident and death. The mere existence of a need of support or moral or legal obligation to support is not sufficient to show dependency. However, occasional gifts or aid do not amount to legal dependency. Lumbermen's Underwriting Alliance v. Teague, 521 So.2d 820 (La.App. 2d Cir.1988); Hackney v. G.T. Contractor, 602 So.2d 268 (La.App. 2d Cir. 1992); Broussard v. West-Cal Construction Co., Inc., 96-18 (La.App. 3d Cir. 6/12/96), 676 So.2d 743.
In the present case, the decedent had contributed absolutely nothing to the support of his wife and daughter for three months before his death. When he left his family in June 1994, he made a complete financial break from them. The plaintiffs here did not receive small amounts of support from the decedent over and above what they were receiving from public assistance. Therefore, the hearing officer did not err in finding that the plaintiffs were not totally or partially dependent upon the decedent at the time of his death. Even though, as in Hudson, Moy, and Slaughter, the result is harsh in denying benefits to the child and spouse of the decedent while awarding the parental lump sum benefit to the decedent's mother, this result is mandated by the workers' compensation statutes. Therefore, we affirm the hearing officer's decision denying death benefits to Kira and Karolina Silk and awarding the parental lump sum payment to the decedent's mother, Vera Silk.

PENALTIES AND ATTORNEY FEES
The appellants also argue that the hearing officer erred in failing to award penalties and attorney fees. This argument is without merit.
Statutory penalties and attorney fees are not allowed when a compensation claim has been reasonably controverted, that is, where the employer has a reasonable basis for believing that the claimant is not entitled to benefits. La. R.S. 23:1201(F)(2); Hunt Plywood, Inc. v. Estate of Davis, supra. A claimant is entitled to attorney fees only if the failure to pay benefits is arbitrary, capricious, or without probable cause. La. R.S. 23:1201.2. Whether penalties and attorney fees are to be awarded depends primarily upon the facts known to the employer or insurer at the time of its action. Furthermore, such provisions are penal in nature and must be narrowly construed. Hunt Plywood, Inc. v. Estate of Davis, supra. In this case, LWCC had information from Kira Silk that the plaintiffs were not living with the employee at the time of his death and that he had not provided any support to them for several months prior to his death. Therefore, there was a reasonable basis for believing that the plaintiffs were not entitled to receive death benefits. After finding that the plaintiffs were not entitled to death benefits, the hearing officer had no basis for granting penalties and attorney fees and neither La. R.S. 23:1201(E) nor 23:1201.2 countenance *102 such an award for the unsuccessful prosecution of a cause. Hunt Plywood, Inc. v. Estate of Davis, supra. Because we affirm the hearing officer's decision that the plaintiffs are not entitled to death benefits, we also deny their claim for penalties and attorney fees.

CONCLUSION
For the reasons stated above, we affirm the decision of the hearing officer, denying the claims of the plaintiffs, Kira and Karolina Silk, for death benefits and penalties and attorney fees arising from the death of Barney Silk, Sr. Costs of the appeal are assessed against the plaintiffs.
AFFIRMED.
MARVIN, C.J., dissents with written reasons.
MARVIN, Chief Judge, dissenting.
I respectfully dissent because the hearing officer is effectively saying
 that a decedent husband and father is not "living with" his wife and child when, three months before his death, he leaves the family home to sometimes "live" with a paramour, but visits his wife and child in the family home two to three times each month; and
 that because the mother and father had been separated and had not reconciled for three months, during some of which time the mother received public aid for the child and no "contributions" from the husband and father, the widow and child are not wholly or partially "dependent" on the decedent within the meaning of the w.c. statute.
A spouse of a decedent has sometimes been found to have been living with the decedent even though the decedent had moved out of the family home to live with others within a few months of his death. Such an "abandonment" of one's family may sometimes be found temporary and equivocal. See cases discussed and cited in Malone-Johnson, §§ 304-310. In such instances the "living together" requirement may be satisfied where the spouse shows "the separation was without [her] fault or consent ... she remained faithful to the errant spouse and the facts reasonably justified an anticipation of return or reconciliation." § 304, p. 20-21. Here, the decedent returned to the family home to visit his wife and daughter two to three times each month during the last three months of his life.
Moreover, La. R.S. 23:1231 B, providing the formula for those who are partially dependent upon a decedent, expressly requires consideration of the contributions the decedent made to them from his earnings, "in the year prior to his death." Here, the decedent provided the sole support for his wife and child for nine of the twelve months prior to his death, and returned to the family home to visit them as many as nine times during the last three months of his life.
The law neither compels nor warrants finding either that the decedent was not "living with" his wife and child or that they were not wholly or partially dependent upon the decedent "in the year prior to his death." Would the law require the result pronounced by the WCHO if the decedent left the family home under the same circumstance 10 days, 30 days, 65 days before his death?
The decision of the WCHO, in my opinion, is clearly wrong, factually and legally, and should be reversed.
Before MARVIN, C.J., and WILLIAMS, STEWART GASKINS and PEATROSS, JJ.

ON REHEARING
MARVIN, Chief Justice.
This court granted the application of the widow and five-year-old child of the decedent to reconsider whether, under the circumstances of this record, the widow and child were "living with" the decedent when he was accidentally electrocuted three months after he moved out of the family home.
Notwithstanding that the widow agreed that the decedent moved out of the family home on June 28, 1994, and thereafter made no monetary contributions to support her and their child, the record establishes these undisputed circumstances:
*103  The decedent resumed drinking sometime before June 1994, and began consorting with a paramour, sometimes "staying with that girl at her parents' house."
 On June 14, 1994, the decedent threatened his spouse and "ordered" her out of the family home. In response, she consulted an attorney and signed a petition for a protective order on that day in accord with La. R.S. 46:2131. Notwithstanding this circumstance, the petition was not filed and they later "reconciled" on that day, "tried to work it out, and then he just up and told me [on] ... June 28th that he wasn't going to stay there [at home] anymore."
 On June 30, 1994, the petition, filed in forma pauperis, was presented to a district judge who signed the protective order on that date. Afterward, however, the decedent "had come back and apologized for that." The widow explained that she had not filed any "divorce papers" before decedent died on September 29, 1994, because "... we had been seeing one another occasionally. He had come by and we had talked about getting back together." She stated. "sometimes [he] would [come by] a couple of days out of the week, and then there would be times he would come ... once a week. Be about three times out of a month. He wanted to see the little girl and he wanted to talk to me and try to get back together." On cross-examination. the widow admitted writing to her stepson on August 22, 1994, that she "wanted to get this divorce over with," but testified she had a "change of heart ... and wanted to reconcile with Barney," the decedent. In the August 22 letter, she mentioned that the decedent was "staying with that girl at her parents' house." On September 15, 1994, two weeks before decedent's death, she again wrote her stepson, saying that her five-year-old "does understand that [her daddy] will come to visit. In fact he came by here Monday...." She wrote, "I had tried to make myself hate him and lose my feelings for him but I can't. He still means a lot to me."
 According to decedent's mother, the decedent, after "separating" from his wife on June 28, "stayed" with his mother "approximately one month." His mother said that "when he left the house, he moved to [another town] and was staying with some people by the name of Brown."
 In the letter of September 15, the widow wrote, "I don't know how I'm getting by with no income coming in."
When the case was tried the widow testified that she had been receiving monthly AFDC for her daughter and "food stamps" and had resumed working after decedent's death. We conclude the widow and child received no federal aid and had "no income coming in" between June 28 and September 29, 1994, the date decedent suffered his fatal injury. They lived on what food was in their freezer and pantry in the family home, cooking with butane, all paid for by the decedent, apparently before June 28,1994.
Between June 28 and September 29, 1994, the decedent "visited" his wife and child in the family home three times during each month, the last visit perhaps being not later than "Monday," September 12, 1994 (mentioned in the September 15 letter).
The OWC denied the claim of the widow and child on December 8, 1994. After that time, the decedent's son and his mother filed their claims with OWC. The matter was tried before the WCHO in March 1996.
In her reasons for her decision, wrongly styled "judgment,"[1] the WCHO made three conclusions, citing La. R.S. 23:1255: the spouses had been separated for approximately three months, during which time decedent made no contributions to his spouse and child, and there was no reconciliation. The cited statute states that no compensation shall be payable to the surviving spouse unless she was either living with the deceased spouse at the time of death, or was actually dependent upon the deceased spouse for support.
As noted, however, in the dissent to the original opinion, citing Malone-Johnson, an abandonment of one spouse by the other *104 or a "separation" of spouses may be found temporary and equivocal where the circumstances objectively justify an anticipation of return or reconciliation. The fact that there was "no reconciliation" as found by the WCHO does not negate the conclusion that the circumstances of this record, viewed objectively, justify the anticipation of reconciliation. Moreover, we must find clearly wrong the WCHO's conclusion that the decedent made "no contribution" to his spouse and child during the three months in question, because they subsisted during that time, not on governmental subsidy or private alms, but on food and fuel contributed by the decedent before June 28.
The contribution required by the statute is not qualified or limited to a monetary contribution. Neither should the contribution be required to have been made concurrently or closely to the contributing spouse's death. It is not unreasonable to imagine that a spouse, departing the family home because of the attraction of a paramour, might either before or after his departure provide fuel and food, rather than money, for his family's subsistence during his extra-marital amorous adventure.
Each case presenting these issues must necessarily be resolved on its own specific circumstances and not by general conclusions of "not living together," "no contributions," and "no reconciliation." Likewise, it is not whether the left-at-home spouse subjectively "hopes" the errant spouse will return home, but whether the circumstances of the particular couple reasonably and objectively justify the anticipation of reconciliation.

DECREE
On this record, the decision of the WCHO is reversed and judgment is hereby rendered in favor of appellants for worker's compensation death benefits as the law provides. Costs are assessed to appellee and the matter is remanded to OWC.
GASKINS and PEATROSS, JJ., dissent for reasons stated in original opinion.
NOTES
[1] When this matter was filed with the Office of Workers' Compensation, the decedent, Barney Silk, Sr., was listed as the plaintiff. However, the plaintiffs and appellants in this case are Kira and Karolina Silk, the wife and daughter of the decedent. Further, at the hearing level, the plaintiffs' claims were consolidated with claims by Barney Silk, Jr., son of the decedent, and Vera Silk, mother of the decedent. The plaintiffs, Kira Silk and Karolina Silk, have filed the only appeal in this matter. Therefore, this is not a consolidated matter on appeal.
[1] See discussion about terminology and authorities in Walker v. ConAgra Food Services, 28,205 (La.App. 2d Cir. 4/3/96), 671 So.2d 1218.